692 N.W.2d 128 (2005)
2005 ND 39
In the Interest of D.P.O.
D.P.O., A.D.O., the parent and natural mother of D.P.O., G.O., grandparent of D.P.O., Plaintiffs and Appellees and
The Grand Forks County Social Service Board, Assignee for A.D.O. and G.O., Plaintiff
v.
N.H., Defendant and Appellant.
No. 20040176.
Supreme Court of North Dakota.
February 16, 2005.
*129 Thomas V. Omdahl, Omdahl Law Office, Grand Forks, ND, for defendant and appellant.
G.O., pro se, plaintiff and appellee.
KAPSNER, Justice.
[¶ 1] N.H. ("Nathan")[1] appeals from the district court order denying his motion to obtain a passport for his minor daughter, D.P.O. ("Donna"), finding her maternal grandparents had standing to object to his motion, and refusing to combine the grandparents' visitation with Donna's mother's visitation. We dismiss the first two issues as moot and affirm the decision on visitation.

I.
[¶ 2] Nathan and A.O. ("Allison") are the parents of a minor child, Donna. Nathan has primary custody of the child, Allison has visitation one weekend each month, and her parents, Donna's maternal grandparents, have visitation one weekend each month. The grandparents, G.O. ("Greg") and L.O. ("Lisa"), have been found to be psychological parents to Donna. See Interest of D.P.O., 2003 ND 127, ¶¶ 8, 12, 18, 667 N.W.2d 590.
[¶ 3] Nathan, a Syrian citizen with a work visa, is employed by the University of North Dakota. His visa is renewable at his employer's request, and Nathan testified the visa would be renewed upon expiration in 2004. He further testified he has begun the process to obtain United States citizenship.
[¶ 4] The relationship between Nathan and the grandparents is strained. Nathan claims Greg has made racist comments based on Nathan's Middle Eastern heritage. He also claims the grandparents have interfered with his relationship with Donna by criticizing him in her presence, removing her from daycare without his permission, and filing complaints with Social Services.
[¶ 5] Nathan would like to take Donna to Egypt for a vacation to meet his family. Both parents must sign for a child under the age of 14 to receive a United States passport unless there is a court order stating one parent has "sole" physical custody *130 and is not prohibited from traveling outside the United States with the child. Allison refuses to sign so Donna can have a passport, and Nathan cannot obtain one without her consent because the custody order states Nathan is the "designated physical custodial parent" and is silent regarding international travel.
[¶ 6] Nathan filed a motion to obtain a passport, requesting a court order stating he was granted sole physical custody and is not prohibited from traveling outside the United States with the child. Such an order would enable him to obtain a passport for Donna without Allison's consent. Allison and the grandparents opposed Nathan's motion. Nathan alleged the grandparents did not have standing to challenge his motion. He also requested Allison's and the grandparents' visitation be combined instead of each party having separate visitation.
[¶ 7] The district court denied the motion on the grounds that Egypt and Syria have not ratified or adopted the Hague Convention on International Child Abduction. The court expressed concern about enforcement should Nathan decide not to return to the United States with Donna. The court found the grandparents had standing to object to Nathan's motion because they have been declared psychological parents. The court further found separate visitation with Allison and the grandparents was in Donna's best interest, and Nathan had failed to prove visitation with the grandparents is adversely affecting his parent-child relationship with Donna. Nathan appealed.

II.
[¶ 8] This Court can consider the issue of mootness in every appeal and will dismiss an appeal if the issue becomes moot. Interest of W.O., 2004 ND 8, ¶ 10, 673 N.W.2d 264. This Court will only adjudicate actual controversies, and "[i]f certain events have occurred which makes it impossible for the Court to issue relief, or when the lapse of time has made the issue moot, then no actual controversy exists." Id. This Court will dismiss the appeal of a moot issue unless "the controversy is one of great public interest and involves the authority and power of public officials or if the matter is capable of repetition, yet evading review." Id. at ¶ 11.
[¶ 9] Nathan argues the district court erred in denying his request for an order allowing him to obtain a passport because there is no evidence that he would attempt to remain in Egypt with Donna. This issue is moot because Nathan's counsel stated at oral argument that Nathan, by virtue of his Syrian citizenship, was able to obtain a Syrian passport for Donna. This passport allows Donna to travel anywhere Nathan can, including Egypt and Syria. Nathan's attorney further represented that Nathan and Donna were in Egypt visiting Nathan's family at the time of oral argument in this case. When asked by this Court, "[t]he child has a passport and is visiting the relatives in Egypt?" Nathan's counsel replied, "[t]hat's what's happening today."[2]
[¶ 10] While the Syrian passport is more limited than a United States passport, so Nathan still cannot travel with Donna as freely as he would like, Nathan's trial documents and testimony indicate he desired a passport for Donna so he could take her to Egypt to meet his family. *131 Only once, upon the prompting of his attorney, did he testify that he wanted a United States passport. However, he repeatedly testified he wanted to take Donna to Egypt to spend time with her extended family. Nathan was able to do this when he obtained a Syrian passport and traveled with Donna to Egypt. Based on representations of Nathan's counsel, we conclude no actual controversy exists and the issue is moot.

III.
[¶ 11] Nathan argues the district court erred in finding the grandparents had standing to oppose his motion to obtain a passport. Because we find the issue of obtaining a passport moot for reasons set forth above, we find it unnecessary to address the issue of the grandparents' standing.

IV.
[¶ 12] Nathan claims the court's decision to keep Allison's and the grandparents' visitation separate was clearly erroneous because he provided evidence the grandparent visitation was adversely affecting his parent-child relationship. A district court's decision on grandparent visitation is a finding of fact reviewed by this Court under the clearly erroneous standard. Schiff v. Schiff, 2000 ND 113, ¶ 10, 611 N.W.2d 191. A finding is clearly erroneous if it is induced by an erroneous view of the law, it is not supported by any evidence, or this Court concludes, upon a review of the entire record, that a mistake has been made. Id.
[¶ 13] Grandparent visitation is provided for by N.D.C.C. § 14-09-05.1, which states, in part, "[t]he grandparents and great-grandparents of an unmarried minor may be granted reasonable visitation rights to the minor by the district court upon a finding that visitation would be in the best interests of the minor and would not interfere with the parent-child relationship." This Court previously affirmed a district court decision finding visitation with her grandparents, who have been recognized as psychological parents, is in Donna's best interest. Interest of D.P.O., 2003 ND 127, ¶ 19, 667 N.W.2d 590. However, this Court also stated, "[t]he trial court can revisit the matter of grandparent visitation if there is evidence of interference with the parent-child relationship." Id. at ¶ 20. Nathan alleges such interference has occurred.
[¶ 14] Nathan testified Donna's behavior is altered after visitation with her grandparents. Her sleep pattern is disrupted, she wants to eat only candy, she uses vulgar language, she acts aggressively, and she has regressions in her toilet training, even though she has been fully trained. Nathan further testified Donna tells him he is stupid and she hates him. He claims the grandparents, especially the grandfather, make racist comments about him and say things such as Nathan should not spend the Fourth of July with Donna because he is not an American and she should be with an American family. The grandfather testified he has never made racist comments about Nathan.
[¶ 15] The district court made findings explaining its decision to allow grandparent visitation to continue:
As noted above, this has been a contentious case. [Nathan] claims that the [grandparents] are racially prejudiced against him and that they are trying to alienate [Donna] from him. The Court does not find any evidence of this alleged prejudice. It is true that the parties have had a contentious relationship, and that dysfunctional relationship continues to the present time. Nothing in that regard has changed since the Judgment was entered.... [T]he charge of *132 parental alienation by the [grandparents] is not persuasive to the Court. In fact, the clinical impressions reached by Northeast Human Service Center, through Dr. Myron Veenstra, indicated that: "[the grandfather] appears able to separate his feelings towards the biological father in contact with the child. He appears able to have unsupervised contact with the granddaughter and not act in a manner that alienates the biological father. He appreciates the importance of the granddaughter's need to develop a clear relationship with the father, although [the grandfather] would still prefer his getting custody."
[Nathan] is the parent who has had [sic] been held in contempt of court for his failure to follow the visitation schedule in the Judgment. He denied [the grandparents] their weekend visitation without adequate cause and the Court ordered on March 19, 2004 that the twelve days missed ... be made up on every other weekend.... [Nathan] seems to interpret Court orders to suit himself, with the result that he is in continuing contempt of court for failure to make up the weekends that were lost by the [grandparents].... [Nathan] does not follow the visitation provisions in the Judgment and that is a very disturbing indication to the Court that if there is parental alienation in this case, the alienation may very well be on [Nathan's] part.
...
As indicated above, the circumstances have not changed since the Judgment was entered. [Donna] apparently still uses bad language on occasion, according to [her daycare provider], as was the case before the Judgment was entered. [Donna] still shows some aggressive behaviors, and adjustment problems when going between households.... There is a difference between the homes that make adjustments problematic. But the parties must work together to establish as much consistency in the home environments as possible to achieve a uniform comfort level for [Donna].
...
The bad relationship is a two-way street, and each side must be able to put aside past feelings and work together for the good of [Donna]. Conversely, [Nathan] needs to recognize the right of the [grandparents] to continue their role, especially in view of the fact that the [grandparents] were the parent figures for [Donna] a few days after her birth until shortly before the Judgment was entered.... Each party must share the blame for [Donna's] acting out behaviors, which is really [Donna's] reaction to the stress that she feels because of the bad relationship between her father and the [grandparents]. The parties, as parents and grandparents, are the most important people in [Donna's] life. Any alienation of [Donna] by any party from any other party is very damaging to [Donna].... All parties must be able to recognize and correct the terrible toll that the current situation takes from [Donna].
[¶ 16] The district court considered and weighed the evidence presented by both Nathan and the grandparents and concluded there was insufficient evidence of interference with the parent-child relationship to discontinue the child's monthly visitation with her grandparents. From a review of the record, we conclude the court's findings are not clearly erroneous. We affirm the decision to keep the grandparents' and mother's visitations separate, and recognize the district court's continuing jurisdiction over this matter if there is evidence of interference with the parent-child relationship in the future.

*133 V.
[¶ 17] We dismiss as moot Nathan's claims that the district court erred by denying his motion to obtain a passport for Donna and finding her maternal grandparents had standing to object to his motion. We affirm the district court's decision to allow the grandparents to continue exercising visitation separate from the mother.
[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.
NOTES
[1] The names of the parties are pseudonyms.
[2] Under N.D.R.App.P. 42(c), which states "[w]hen an issue before the court may have become moot due to a change in circumstance, the parties shall advise the court in writing and explain why appeal of the issue should or should not be dismissed," this information should have been provided to the Court in writing.