2005 ND 172

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Brent BARTELSON, Defendant and Appellant.**

No. 20040266.

Supreme Court of North Dakota.

Oct. 18, 2005.

Eric P. Baumann, Slorby Law Office, Minot, ND, for defendant and appellant.

Mark A. Flagstad, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

KAPSNER, Justice.

[¶ 1]   Brent Bartelson appeals from a criminal judgment entered on a conditional plea of guilty for possessing marijuana with the intent to deliver, reserving his right to review a denial of his motion to

suppress the marijuana found in his car. Bartelson claims the marijuana was unconstitutionally seized as a result of an "extremely pretextual" stop. We conclude the district court properly refused to suppress the marijuana obtained from a search of Bartelson's vehicle, and therefore, affirm the criminal judgment of the district court.

## I.

[¶ 2] Around 3:30 p.m., Bartelson was stopped on Highway 83 south of Minot and cited for a tinted window violation by Officer Pat Hudson. An anonymous caller informed the Ward County Sheriff's Office that a vehicle stopped south of Minot on Highway 83 contained a large amount of marijuana. After investigation, Agent Michael Marchus learned that Officer Pat Hudson had recently stopped Bartelson on Highway 83. Marchus knew from previous intelligence that Bartelson transported large amounts of marijuana from Colorado in his vehicle. Marchus learned this information during a federal debriefing when he was informed that an individual known as "Bart" drove a Mazda with the license plate number GRR 105 to transport drugs. Marchus ran the number and discovered the vehicle was registered to Brent Bartelson. Marchus also knew, from two separate sources, that a large amount of marijuana had recently been stolen from Bartelson's home. Marchus asked Officers Pat Hudson and Kevin Huston to help in the search for Bartelson's Mazda.

[¶ 3] Traveling in an unmarked vehicle, Marchus was the first officer to locate Bartelson's car. Marchus followed Bartelson for a few miles until Officer Kevin Huston caught up to him, followed by Officer Pat Hudson. Approximately forty-two minutes after Bartelson was first stopped by Officer Pat Hudson, Officer Kevin Huston passed Marchus and stopped Bartelson's vehicle. Marchus, Hudson, and three other task force officers also arrived at the scene.

[¶ 4] Bartelson explained to the officer that he had just been pulled over for the same tinted window violation. Officer Kevin Huston then went back to his police car to issue a written warning for the violation. As Officer Kevin Huston was writing out the warning, Marchus approached Bartelson and asked if he could search his vehicle. Marchus testified Bartelson gave his consent to search the vehicle during the stop. A video recording of the stop shows Bartelson assisting the officers with the search.

[¶ 5] When the search began, Officer Pat Hudson checked the driver's license of Bartelson's passenger, Lance Cotton. Cotton was arrested for possession of a suspended license. While searching the vehicle, law enforcement found marijuana in the passenger compartment of the car. Bartelson was arrested for possession of marijuana with intent to deliver. Bartelson moved to suppress the evidence, arguing the stop and resulting search were unconstitutional. The trial court denied the motion. Bartelson conditionally pled guilty, reserving his right to appeal.

## II.

[¶ 6] On appeal, Bartelson argues the trial court erred in denying his motion to suppress because the stop of his vehicle was unconstitutional. The State argues the stop was constitutional because the officer had reasonable articulable suspicion that Bartelson was committing a tinted window violation. The State argues whether the stop was pretextual is irrelevant because the officer had observed a traffic violation.

[¶ 7] When reviewing the denial of a suppression motion, we defer to the trial court's findings of fact. *State v. Kitchen*, 1997 ND 241, ¶ 11, 572 N.W.2d

106. Although we defer to the trial court's findings of fact, questions of law are fully reviewable. *State v. Overby*, 1999 ND 47, ¶ 5, 590 N.W.2d 703. The trial court determined:

> Trooper Huston had a valid basis to stop of [sic] Bartelson's vehicle on the date and time in question. Trooper Huston observed that Bartelson's vehicle had tinted windows in violation of N.D.C.C. § 39–21–39. That Trooper Huston had been asked by Agent Marchus to locate and stop the described vehicle based on the anonymous tip Marchus had received does not vitiate the reasonableness or validity of the stop.

[¶ 8] The Fourth Amendment of the United States Constitution and Article I, § 8 of the North Dakota Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." The United States Supreme Court has stated:

> Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment]. An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

*Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citations omitted). Traffic violations, even if pretextual, provide the requisite probable cause to conduct an investigatory vehicle stop. *State v. Loh*, 2000 ND 188, ¶ 10, 618 N.W.2d 477. Under *Whren*, a police officer's subjective intentions in making a stop are not important as long as a traffic violation has occurred. *Whren*, 517 U.S.

at 813, 116 S.Ct. 1769. As we have noted, "a party 'is going to have difficulty in using subjective motive to attack an arrest which is otherwise objectively justified by probable cause.'" *State v. Gregg*, 2000 ND 154, ¶ 46, 615 N.W.2d 515 (citing *Holland v. City of Portland*, 102 F.3d 6, 11 (1st Cir. 1996)).

[¶ 9] After learning Officer Pat Hudson had recently stopped Bartelson on Highway 83, Marchus requested Officer Kevin Huston's help to locate and stop Bartelson's vehicle because Marchus had information that Bartelson might be transporting illegal drugs. Officer Kevin Huston testified he observed a black vehicle with tinted windows in violation of N.D.C.C. § 39–21–39. Officer Kevin Huston testified he probably would not have stopped a vehicle for the same violation, at that time, if the vehicle did not match the vehicle description given to him by Marchus. But under *Whren*, an officer's subjective intent is not relevant in determining probable cause. *Whren*, 517 U.S. at 813, 116 S.Ct. 1769.

[¶ 10] In *Whren*, the United States Supreme Court held that an officer's actual motivation for initiating a traffic stop did not affect the constitutional reasonableness of a stop based on probable cause. *Id.* While patrolling a high drug area, plain clothed officers became suspicious of a truck at a stop sign with temporary license plates and young occupants. *Id.* at 808, 116 S.Ct. 1769. The truck remained at the stop sign for an unusually long time, turned suddenly without signaling, and sped off at an "unreasonable" speed. *Id.* The officers stopped the vehicle, and large quantities of illegal drugs were found. *Id.* at 808–09, 116 S.Ct. 1769. The defendants did not dispute the officers had probable cause to believe they had committed a traffic violation. *Id.* at 810, 116 S.Ct. 1769. They argued, because the use of automo-

biles is so heavily regulated and total compliance is nearly impossible, an officer will be able to catch any person with a violation. *Id.* This allows officers to use a traffic stop as a means for investigating other possible violations for which there is no probable cause. *Id.* The defendants argued probable cause should not be the standard for traffic stops, but rather, whether a reasonable police officer would have made the stop for the given reason. *Id.* The *Whren* court rejected this argument finding an officer's subjective intent did not affect the constitutionality of a traffic stop based on probable cause. *Id.* at 813, 116 S.Ct. 1769. We have similarly held a valid stop is not vitiated because the officer's actual reason for stopping the vehicle was not adequate. *State v. Loh,* 2000 ND 188, ¶ 14, 618 N.W.2d 477; *Wheeling v. Director, N.D. Dep't of Transp.,* 1997 ND 193, ¶ 11, 569 N.W.2d 273; *Kahl v. Director, N.D. Dep't of Transp.,* 1997 ND 147, ¶ 14, 567 N.W.2d 197; *Zimmerman v. N.D. Dep't of Transp.,* 543 N.W.2d 479, 483 (N.D.1996).

[¶ 11] Based on *Whren,* other jurisdictions have also held stops based on probable cause are not invalidated because they are pretextual. In *Sanchez v. State,* 847 So.2d 1043, 1044 (Fla.Dist.Ct.App.2003), officers received an anonymous tip that Sanchez was transporting cocaine. Law enforcement began surveillance of his home and followed him when he did not take his normal route to work. *Id.* Local law enforcement requested assistance from other jurisdictions in locating his vehicle. *Id.* The officers were told to look for a green Suburban possibly carrying drugs and were given the license plate number. *Id.* Approximately a half hour later, an officer located and followed Sanchez's vehicle. *Id.* The officer paced the vehicle at eight miles per hour over the posted speed limit and initiated a stop. *Id.* Sanchez argued the stop was a pretext, and the "egregious" facts of the officers' "lying in

wait" until he committed a traffic offense took his case outside of the *Whren* rationale. *Id.* at 1045. The court disagreed finding the stop did not violate the Fourth Amendment under the objective standard in *Whren.* *Id.* at 1045–46 (citing *Whren,* 517 U.S. at 817–19, 116 S.Ct. 1769).

[¶ 12] In *Damato v. State,* 64 P.3d 700, 702 (Wyo.2003), an officer stopped Damato for exceeding the posted speed limit by seven miles per hour. During the stop, the officer became suspicious of Damato for a number of reasons. *Id.* After questioning Damato, the officer released him without issuing a speeding citation. *Id.* The officer radioed dispatch and informed other officers of his suspicions, requesting they look for the vehicle. *Id.* at 702–03. A second officer received the call and proceeded to look for Damato's vehicle. *Id.* at 703. He located the vehicle, turned around, and followed the vehicle looking for probable cause to initiate a stop. *Id.* The officer stopped Damato for traveling two miles per hour over the seventy-five mile per hour posted speed limit. *Id.* The court noted that although it was concerned about this "tag-team" approach to stopping vehicles, the stop was valid because the officer had observed a traffic violation. *Id.* at 705–06.

[¶ 13] Here Officer Kevin Huston had probable cause to stop Bartelson's vehicle the second time because of the tinted window traffic violation. Officer Kevin Huston testified that it is not uncommon for the same vehicle to be pulled over for the same violation twice in one evening by two different officers. We can imagine a scenario where an officer repeatedly stops the same vehicle for the same violation. In such a situation, the unreasonableness of the officer's action may violate the Fourth Amendment, but this is not such a case.

[¶ 14] Bartelson's vehicle was stopped twice by two different officers in a short

period of time for the same tinted window violation. At the suppression hearing, Officer Kevin Huston gave unclear testimony about his knowledge of the prior stop of Officer Pat Hudson. He testified he was not aware that the vehicle he stopped was the same vehicle Officer Pat Hudson had stopped:

Q. And you were informed that this is the second time that it had been stopped for tinted windows by Hudson by Underwood?

A. After I stopped the vehicle?

Q. After you stopped it?

A. Correct.

Q. How long after you stopped it?

A. After I talked to Mr. Bartelson.

Q. That's the first thing you learned after you stopped the vehicle was that he had already been given a citation?

A. That's correct.

Officer Kevin Huston also testified that he thought it possibly was the same vehicle:

A. It's possible that that vehicle could have been stopped, yes.

Q. Well, were you aware of that fact?

A. At the—when I met the vehicle and saw it, I wasn't sure if that was the particular vehicle or not, no. The only description I got was a black 4–door vehicle with tinted windows.

When questioned by defense counsel, he further testified:

Q. So you initiated a stop of a vehicle, presumably what your belief was, believing that this vehicle had just previously been stopped and ticketed for a tinted window violation. That was your knowledge and belief that this vehicle had just been stopped and ticketed for a tinted window violation, and your purpose then was to simply give it another warning for the same tinted window violation?

A. Correct.

[¶ 15] The trial court acknowledged the ambiguity of Officer Kevin Huston's knowledge of the prior stop, but made no factual findings about Officer Kevin Huston's credibility in describing his motives for the stops. The trial court relied instead on our prior case law that motivation is irrelevant if probable cause exists citing *State v. Loh*, 2000 ND 188, ¶ 10, 618 N.W.2d 477: "Traffic violations provide a proper basis for stops, even if pretextual, and evidence discovered during such stops is admissible."

[¶ 16] *Whren* does not require us to delve into an officer's intent. An officer's probable cause does not disintegrate simply because another police officer had previously stopped the same vehicle for the same violation. It is not unreasonable for officers to request assistance locating a vehicle. It is not unreasonable for different law enforcement officers to stop a vehicle twice for the same tinted window infraction in a short period of time. Officer Kevin Huston observed the traffic violation. He testified: "I saw the vehicle with the tinted windows and made the stop." Accordingly, the stop of Bartelson's vehicle was constitutional because Officer Kevin Huston had probable cause to believe Bartelson was committing a tinted window violation.

### III.

[¶ 17] Bartelson argues he did not voluntarily consent to the vehicle search. The State argues that whether Bartelson consented to the search is immaterial because the search was valid as a search incident to the arrest of his passenger, Lance Cotton. When a vehicle's occupant is arrested, law enforcement can conduct a search of the vehicle's passenger compartment contemporaneous to the arrest. *State v. Tognotti*, 2003 ND 99, ¶ 8,

663 N.W.2d 642. A search incident to a valid custodial arrest is an exception to the warrant requirement. *Id.* at ¶ 7.

[¶ 18] Officer Kevin Huston testified that Lance Cotton was asked for his identification and subsequently arrested for possession of a suspended driver's license when the "consent search was being conducted." The officers started the consent search in the vehicle's trunk. A review of the video tape made during the stop indicates that law enforcement began searching inside the passenger compartment of Bartelson's vehicle before Cotton's arrest. The contraband which is the subject of the suppression motion was found in the passenger compartment, although it is unclear whether it was discovered before Cotton's arrest. We do not need to decide whether the evidence was discovered before or after Cotton's arrest.

[¶ 19] We have stated, " '[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa' so long as the fruits of the search were 'not necessary to support probable cause to arrest.' " *State v. Wanzek,* 1999 ND 163, ¶ 17, 598 N.W.2d 811 (citations omitted). Because Cotton possessed a suspended driver's license, the officer had independent probable cause to arrest Cotton before the drug evidence was discovered. Cotton was arrested moments after the search of the passenger compartment began. Therefore, the search was a valid search incident to arrest. We conclude, therefore, the trial court properly refused to suppress the evidence obtained during the search of Bartelson's vehicle.

### IV.

[¶ 20] Because we conclude the stop did not violate the Fourth Amendment and the search was a valid search incident to arrest, the criminal judgment is affirmed.

[¶ 21] DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

MARING, Justice, dissenting.

[¶ 22] I respectfully dissent. Because I believe the second stop of Bartelson violated the Fourth Amendment, I would reverse the trial court's denial of Bartelson's motion to suppress.

[¶ 23] The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court has stated:

> Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment]. An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a *general matter,* the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

*Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (emphasis added, citations omitted). Probable cause to believe a driver has violated a traffic law renders a stop reasonable under the Fourth Amendment, and the evidence obtained from the stop admissible. *Kahl v. Director, N.D. Dep't of Transp.,* 1997 ND 147, ¶ 12, 567 N.W.2d 197 (citing *Whren,* 517 U.S. at 810, 116 S.Ct. 1769).

[¶ 24] It is without dispute that the Supreme Court's central holding in *Whren* eliminates the argument that a stop vio-

lates the Fourth Amendment solely because the actual motivation of the officer was not the traffic violation. I do not question that, if a stop is made based on probable cause, the officer's subjective motivation for the stop—the pretext—is irrelevant. But, I do not, nor do I believe does the majority, read *Whren* as eliminating the need to determine if a stop was reasonable under the Fourth Amendment. "We can imagine a scenario where an officer repeatedly stops the same vehicle for the same violation. In such a situation, the unreasonableness of the officer's action may violate the Fourth Amendment . . ." Majority opinion, ¶ 13.

[¶ 25] Implicit in the *Whren* analysis is a finding that the officer making the stop had probable cause and, using an objective standard, behaved reasonably:

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."

*Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 593–94, 160 L.Ed.2d 537 (2004) (citations omitted) (quoting *Whren,* at 813, 116 S.Ct. 1769). It is because the circumstances—the facts known to Huston at the time of the second stop—when viewed objectively do not justify a second stop that I cannot agree with the majority.

[¶ 26] As *Alford* makes clear, there is a distinguishable difference between an arresting officer's state of mind and the facts that an arresting officer knows. The bright line rule adopted by *Whren* applies only to the state of mind element and, rightly so, takes courts out of the guessing game of trying to determine an officer's motivation. I do not see, however, *Whren,* or any of its progeny, suggesting a court should be blind to facts that are directly applicable to an officer's determination of whether probable cause exists, or whether the officer's actions are justified based on those facts.

[¶ 27] The facts surrounding the stop of Bartelson's vehicle are significantly different from the cases cited by the majority involving pretextual stops based on *Whren's* rationale. Hudson originally stopped Bartelson on Highway 83 south of Minot for a tinted window violation. Hudson testified the traffic stop ended around 3:30 p.m. At 3:28 p.m., Marchus received a call notifying him that an anonymous tip indicated a vehicle stopped on Highway 83 south of Minot contained a large amount of marijuana. Marchus contacted local law enforcement and learned Hudson had just released Bartelson on a tinted window violation. Marchus requested area law enforcement to help locate Bartelson's vehicle. Hudson, Marchus, Huston, and other area law enforcement began looking for the vehicle. At 4:12 p.m., Huston initiated the second stop of Bartelson's vehicle for the same tinted window violation.

[¶ 28] Marchus testified that before Huston stopped Bartelson, he informed Huston about the anonymous tip, gave him the description of the vehicle—a black four door with tinted windows—and gave him the license plate number. Marchus also informed Huston that Hudson had previously stopped the vehicle for a tinted window violation. Huston testified he knew the vehicle's description and that it had been stopped earlier that day. Marchus testified he was in constant radio and telephone contact with the officers involved in

the search for Bartelson's vehicle. Traveling in an unmarked vehicle, Marchus was the first officer to locate the vehicle. He then informed Huston he had located the vehicle. Marchus followed behind Bartelson for a few miles until Huston caught up to him. Huston then passed Marchus, activated his lights, and stopped Bartelson's vehicle.

[¶ 29] The constitutional violation in the second stop of Bartelson is not the agent's request for help from local law enforcement to locate the vehicle. In *Damato v. State,* the Wyoming Supreme Court held that a "tag-team" approach similar to the one used on Bartelson did not invalidate a stop. *See Damato,* 64 P.3d 700, 705–06 (Wyo.2003). In *Sanchez v. Florida,* officers were asked to locate a vehicle with specific license plates. 847 So.2d 1043, 1044 (Fla.Dist.Ct.App.2003). Unlike Bartelson, however, Damato and Sanchez were engaged in a violation independent of the initial stop when stopped. The officer in *Damato* observed the defendant violating the posted speed limit. 64 P.3d at 703 The officer in *Sanchez* located the defendant and observed a speeding violation. 847 So.2d at 1044. Huston did not observe Bartelson commit an independent or separate traffic violation nor did Huston have probable cause to believe that Bartelson was committing any violation other than the tinted window infraction for which he knew Bartelson had just been stopped. As a general matter, a decision to stop a vehicle is reasonable when probable cause exists to believe a traffic violation has occurred. However, it is simply unreasonable to knowingly stop a vehicle repeatedly for the same, fine-only, equipment infraction. *See* N.D.C.C. § 39–21–46(1) (providing a person violating N.D.C.C. § 39–21–39 is guilty of an infraction).

[¶ 30] This Court has said a determination of probable cause is an objective determination based on what a reasonable person in that officer's circumstances and with that officer's knowledge would do. *See State v. Corum,* 2003 ND 89, ¶ 10, 663 N.W.2d 151. Addressing the matter at greater length, the United States Supreme Court has said probable cause and reasonable suspicion are:

> [C]ommonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. As such, the standards are not readily, or even usefully, reduced to a neat set of legal rules. We have described reasonable suspicion simply as a particularized and objective basis for suspecting the person stopped of criminal activity, and probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. We have cautioned that [reasonable suspicion and probable cause] are not "finely-tuned standards," comparable to the standards of proof beyond a reasonable doubt or of proof by a preponderance of the evidence. They are instead fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed.

*Ornelas v. United States,* 517 U.S. 690, 695–96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (citations omitted); *see also Corum,* 2003 ND 89, ¶ 10, 663 N.W.2d 151. I do not believe a reasonable and prudent person, especially a reasonable and prudent law enforcement officer, would find probable cause to stop a person a second time within forty-two minutes for the same tinted windows violation.

The principal components of a determination of reasonable suspicion or probable cause will be the events which oc-

curred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.

*Ornelas,* 517 U.S. at 696.

[¶ 31] I do not dispute that another officer, who had no knowledge of Bartelson's previous stop for a tinted window violation, would have had probable cause to stop Bartelson. Where I part from the majority is in its view that an objective officer, knowing Bartelson had already just been stopped for tinted windows, would have made a second stop for the same violation.

[¶ 32] During the July 17, 2003, preliminary hearing, Huston testified he told Bartelson that, "because [Bartelson] was already stopped for the illegal tint [Huston] wasn't going to issue [Bartelson] a citation, however I would just be issuing a warning for it. It's our policy that if we do stop a vehicle for any type of violation we either give them a written citation or written warning." Huston further testified later in that hearing:

Q: You have given citations for tinted windows?

A: Several.

Q: After you give the ticket the person drives off in your view with those tinted windows?

A: Correct.

Q: Then you are not going to drive down the road ten miles and give them another ticket, are you?

A: Heavens no.

During the November 26, 2003, hearing on the motion to suppress, the following exchange occurs during examination of Huston:

Q: So you initiated a stop of a vehicle, presumably what your belief was, believing that this vehicle had just previously been stopped and ticketed for a tinted window violation. That was your knowledge and belief that this vehicle had just been stopped and ticketed for a tinted window violation, and your purpose then was to simply give it another warning for the same tinted window violation?

A: Correct.

Huston as much as concedes an officer, when viewing the situation objectively, would not have made the second stop. Huston knew that the purpose of the initial stop for a tinted window violation had been accomplished. I do not believe an objective, reasonable law enforcement officer, in this particular context, would have made this second stop.

[¶ 33] "The touchstone of the Fourth Amendment is reasonableness." *State v. Guthmiller,* 2004 ND 100, ¶ 5, 680 N.W.2d 235 (quoting *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). In *Whren,* the United States Supreme Court stated, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren,* 517 U.S. at 813, 116 S.Ct. 1769. The Court held, "[f]or the run-of-the-mine case ... we think there is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure." *Id.* at 819, 116 S.Ct. 1769. Law enforcement's knowing repeated stops of Bartelson's vehicle are neither "ordinary" nor "run-of-the-mine." If the Fourth Amendment's reasonableness requirement is going to mean anything, we must at least hold law enforcement to the standard *Whren* sets out. *Whren* only forecloses an argument that a stop is unreasonable solely because it was based on pretext. The stop still must be reasonable.

[¶ 34] We have held that it is reasonable for an officer to temporarily detain a traffic violator when conducting a traffic stop, but also explained the bounds of that

reasonableness. *See State v. Mertz,* 362 N.W.2d 410, 412 (N.D.1985).

> The constitutionality of an investigative detention is judged under the framework established in *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), requiring that an investigative detention be "reasonably related in scope to the circumstances which justified the interference in the first place." This Court has explained that for traffic stops, "a reasonable period of detention includes the amount of time necessary for the officer to complete his duties resulting from the traffic stop."

*State v. Fields,* 2003 ND 81, ¶ 8, 662 N.W.2d 242 (quoting *Mertz,* at 412). Those duties may include:

> [R]equesting the driver's license and registration, requesting that the driver step out of the vehicle, requesting that the driver wait in the patrol car, conducting computer inquiries to determine the validity of the license and registration, conducting computer searches to investigate the driver's criminal history and to determine if the driver has outstanding warrants, and making inquiries as to the motorist's destination and purpose.

*Fields,* at ¶ 8 (citing *United States v. Jones,* 269 F.3d 919, 924 (8th Cir.2001)). Once made, the investigative detention may continue only so "long as reasonably necessary to conduct these activities and to issue a warning or citation." *Fields,* at ¶ 8; *see also Mertz,* at 412. "A traffic violator is subject to the arresting officer's authority and restraint until the officer completes issuance of the traffic citation and expressly releases the violator." Fields, at ¶ 8 (citing *Mertz,* at 412). Once the purpose of the initial traffic stop is complete, the continued seizure of the driver violates the Fourth Amendment, unless the officer has reasonable suspicion of unlawful activity. *State v. Guscette,* 2004 ND

71, ¶ 7, 678 N.W.2d 126. The purpose of the initial stop was to issue a citation to Bartelson for his equipment violation of tinted windows. That purpose was fulfilled when Hudson issued the citation and released Bartelson. In this case, all of the duties related to a stop for a tinted window violation had been accomplished forty-two minutes prior to the second stop, and the officer making the second stop knew it.

[¶ 35] I am not contending that the second stop is a continuation of the first. But, to allow, as the majority does, law enforcement to knowingly, repeatedly, and successively stop and cite for the same equipment offense within forty-two minutes is inconsistent with the limited detention permissible for traffic violations under *Terry.* *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Fields,* 2003 ND 81, ¶ 8, 662 N.W.2d 242. Law enforcement cannot circumvent *Terry* by calling in another officer to make a second stop, unless an independent traffic violation has occurred. It is reasonable to stop for an independent violation, but not for the same violation when the officer knows the State's purpose has been fulfilled.

[¶ 36] The Fourth Amendment's policy of protecting citizens from unreasonable searches and seizures is meant to minimize governmental confrontations with individuals. Therefore, searches and seizures must be reasonable to comply with the Fourth Amendment's protections. In determining reasonableness, a balancing between the government's interest in protecting its citizens and an individual's privacy interests occurs. In *Whren,* the United States Supreme Court concluded that, when probable cause exists, this "balancing" analysis is only necessary for searches or seizures conducted in an "extraordinary manner." *Whren,* 517 U.S. at 818, 116 S.Ct. 1769. In my opinion the facts in this case were extraordinary.

Stopping Bartelson the second time simply neither benefitted public safety nor furthered any governmental interest. Therefore, the State cannot justify its intrusion.

[¶ 37] *Whren* gives law enforcement expanded authority to stop a vehicle. Bartelson clearly could have been stopped again for speeding, straying over the center or fog line, or any other of the myriad traffic offenses found within our statutes. He could have been stopped by an officer with no knowledge he had already been stopped. However, unless *Whren* is intended to mean the State has unchecked authority to intrude on the liberty of a motor vehicle driver even when the State's interest in protecting its citizens' safety while traveling on the highway has been fulfilled, the facts presented here simply stretch the actions an objective officer would reasonably take further than I am willing to accept. I think it is a mistake to interpret *Whren* as allowing law enforcement officers to repeatedly stop a vehicle to issue a traffic citation or warning for the very same equipment violation. It is the officer's knowledge that Bartelson had already been stopped earlier for the same violation—his knowledge that the State's purposes had already been fulfilled—that makes this second stop unreasonable under the Fourth Amendment.

[¶ 38] The evidence obtained during the search of Bartelson's vehicle may still be admissible if, as the State argues, he voluntarily consented to the search. The trial court determined Bartelson's consent was voluntary under the totality of the circumstances. Consent is an exception to the Fourth Amendment's prohibition against warrantless searches. *State v. De-Coteau*, 1999 ND 77, ¶ 9, 592 N.W.2d 579. Whether consent exists is a question of fact determined from the totality of circumstances. *State v. Mitzel*, 2004 ND 157, ¶ 13, 685 N.W.2d 120. We have explained:

In order to be a valid waiver, there must be a clear and unqualified consent on the part of the defendant. The failure to object to a search is not a waiver. To be a valid waiver, it must clearly appear that the defendant voluntarily waived his rights and knowingly permitted the search by some express consent.

*State v. Manning*, 134 N.W.2d 91, 97 (N.D. 1965). The trial court found Bartelson's words and actions indicated consent.

[¶ 39] Neither of the law enforcement officers present during the time Bartelson allegedly consented remember what he said, only that he consented. Bartelson's attorney asserted that he said "you're going to search it anyway." Because Huston had his microphone off during this exchange, there is no evidence of what Bartelson or the officers actually said. The trial court found the words "you're going to search it anyway" indicated consent. The record does not contain any evidence that Bartelson said, "you're going to search it anyway" because only Bartelson's attorney asserted that was his statement. Therefore, this statement is not supported by the record. The trial court's finding that Bartelson made a statement indicating consent is clearly erroneous because it is not supported by any evidence in the record. *See In Re D.P.O.*, 2005 ND 39, ¶ 12, 692 N.W.2d 128. Marchus' and Huston's sole assertion that Bartelson consented without more specific evidence of the words exchanged cannot, by itself, support a finding of consent.

[¶ 40] The State argues Bartelson's consent was evident because he voluntarily helped law enforcement remove items from the vehicle's trunk. This Court has delineated the test for whether consent is voluntary:

Whether consent to search is voluntary is a question of fact. A trial court must determine whether, under the to-

tality of the circumstances, the consent was voluntary. The government has the burden to prove that consent was voluntarily given.

When consent is the product of a free and unconstrained choice and not the product of duress or coercion, it is voluntary. To determine voluntariness, we focus on two elements: (1) the characteristics and condition of the accused at the time of the consent, and (2) the details of the setting in which the consent was obtained, with no one factor being determinative.

*Mitzel*, 2004 ND 157, ¶¶ 25–26, 685 N.W.2d 120 (citations omitted). "To be voluntary, the consent must not be coerced by explicit or implicit means or by implied threat or covert force." *DeCoteau*, 1999 ND 77, ¶ 9, 592 N.W.2d 579. A defendant's submission to the apparent authority of an officer is not necessarily consent to search and a mere showing of acquiescence without at least tacit consent is insufficient to prove consent. *State v. Avila*, 1997 ND 142, ¶ 17, 566 N.W.2d 410 (citing *Ingram v. State*, 364 So.2d 821, 822 (Fla.Ct.App. 1978)). "A distinction is recognized between submission to the apparent authority of an officer and unqualified consent." *Ingram*, 364 So.2d at 822.

[¶ 41] Hudson released Bartelson from the initial traffic stop around 3:30 p.m. Bartelson continued traveling north on Highway 83 toward Minot. Approximately five minutes later, Hudson received a call from Marchus inquiring whether he had recently stopped a vehicle. Marchus requested help locating the vehicle. As a result, Hudson drove north, attempting to relocate Bartelson's vehicle. At this time, Marchus, Huston and other local task force officers drove south on Highway 83 out of Minot attempting to locate Bartelson. Marchus was the first person to locate Bartelson's vehicle. Marchus turned around and drove north on Highway 83 behind Bartelson's vehicle. Marchus in-

formed Huston he had located Bartelson's vehicle. Huston then turned around and drove north on Highway 83. Marchus followed behind Bartelson for a few miles before Huston arrived. When Huston reached Marchus, Hudson was approximately a mile behind Huston's vehicle. Huston passed Marchus, turned on his lights, and initiated the stop at 16:12:03 pulling up behind Bartelson's vehicle. Within seven seconds, a task force officer in an unmarked vehicle passed Bartelson, stopped on the highway's shoulder, backed up his vehicle, and stopped directly in front of Bartelson's vehicle.

[¶ 42] Twenty-five seconds after the vehicles stopped, Huston approached Bartelson's door. Six seconds after Huston approached, Marchus approached the back of Bartelson's vehicle, followed by Hudson two seconds later. At 16:12:37, Hudson approached passenger Cotton and began questioning him. Forty-three seconds after the stop, Bartelson's vehicle was surrounded by two highway patrol officers and three task force officers. Huston informed Bartelson the reason for the stop was his tinted windows, briefly questioned him, and returned to the back of the vehicle with Marchus. Both Marchus and Huston approached Bartelson to presumably gain consent to search. Marchus opened Bartelson's door and leaned inside the vehicle while Huston leaned over the open car door. According to Marchus's Report of Investigation, he informed Bartelson they had information he was transporting drugs in his car, gained his consent to search and "asked Bartelson if he would exit his vehicle and assist officers in taking items out of the trunk of the vehicle." Less than one minute and thirty seconds after Marchus approached Bartelson, or about three minutes after he was stopped, Bartelson got out of his vehicle and opened the vehicle's trunk. Bartelson was surrounded by a highway patrol officer and

three task force officers when an officer asked "mind taking some of this stuff out." Huston then asked "you don't mind" to which Bartelson replied, "no."

[¶ 43] Several factors in Bartelson's alleged consent militate against a finding of voluntary consent. The number of law enforcement present during the request for consent is a significant factor. *See* 4 Wayne R. Lafave, *Search and Seizures* § 8.2(b) at 62 (4th ed. 2004) (*"United States v. Jones*, 846 F.2d 358 (6th Cir.1988) (finding no consent, court relied on several factors, including that 'the initial stop and blocking of Jones's car by three police cars established a custodial atmosphere and coercive environment'), . . . *Ex parte Tucker*, 667 So.2d 1339 (Ala.1995) ('coercive effect of Sgt. Hurter's words and tone of voice could have only been magnified by the overt presence of five other uniformed police officers and two other marked patrol cars')"). Professor Lafave notes that courts "finding valid consent often stress that there were *not* many police officers present." *Lafave*, at 62 n. 49 (citing *United States v. Sanchez–Valderuten*, 11 F.3d 985 (10th Cir.1993); *United States v. Williams*, 754 F.2d 672 (6th Cir.1985); *State v. McMahan*, 583 S.W.2d 540 (Mo. App.1979)). A defendant's assistance in helping conduct a search may add strength to a finding of voluntary consent. *See, e.g., Sweeney v. Indiana*, 704 N.E.2d 86, 107 (Ind.1998) (finding defendant impliedly consented by opening the trunk of his car); *Nebraska v. Prahin*, 235 Neb. 409, 455 N.W.2d 554, 560 (1990) (noting the defendant voluntarily participated in the search by opening the trunk and removing items). However, such cooperative conduct is less persuasive when highly coercive elements are present. *See* 4 Lafave, *Search and Seizures* § 8.2(g) at 103–05.

[¶ 44] Bartelson was clearly seized by law enforcement and was not free to leave. *See, e.g., Whren*, 517 U.S. at 809, 116 S.Ct. 1769 (noting temporary ·detention during an automobile stop is a seizure). Whether a person is detained by law enforcement is a factor in determining whether consent is voluntary. *United States v. Cuevas–Ceja*, 58 F.Supp.2d 1175, 1189 (D.Or.1999). In determining voluntariness we look at the totality of the circumstances. *Mitzel*, 2004 ND 157, ¶ 25, 685 N.W.2d 120. As we noted, Bartelson's vehicle was surrounded by at least two marked highway patrol cars and two unmarked task force officer vehicles immediately after the stop. Two highway patrol officers and at least three task force officers were present during the seizure. When Marchus asked for Bartelson's consent, one highway patrol officer stood leaning over the driver's door, Marchus crouched inside the driver's door, and other law enforcement officers moved around the vehicle. Bartelson did not offer to open his trunk; rather, Marchus directed him to exit the vehicle, open the trunk, and assist officers in taking items out of the trunk. Furthermore, Bartelson had been stopped less than forty-five minutes earlier for the same violation when officers and law enforcement vehicles surrounded him for the second time, and told him they had information he was transporting drugs in his car. Under these facts, we do not believe Bartelson's assistance in searching the trunk was "the product of a free and unconstrained choice and not the product of duress or coercion." *Mitzel*, 2004 ND 157, ¶ 26, 685 N.W.2d 120. On this record, the State did not carry its burden to prove Bartelson voluntarily consented to the vehicle search.

[¶ 45] Even if Bartelson's consent was voluntary, it was not sufficiently purged of the taint of the illegal police action. We have recently explained:

> [The] voluntary consent to a search, preceded by an illegal police action, does not automatically purge the taint of an illegal detention. A second inquiry is

necessary to determine whether the taint is purged from the evidence seized during the allegedly unlawful detention by considering the following factors: (1) the temporal proximity between the illegal search or seizure and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. If the consent is not purged of the unlawful detention, it is still fruit of the poisonous tree.

*State v. Smith,* 2005 ND 21, ¶ 26, 691 N.W.2d 203 (citations omitted). All three prongs of this test compel the suppression of the evidence as "fruit of the poisonous tree." Bartelson's alleged consent would have been obtained approximately three minutes after the illegal stop. There were no intervening causes in this extremely short period of time to indicate the evidence was not a product of the illegal stop. Finally, the law enforcement's conduct bordered on harassment. Law enforcement's knowing stop of Bartelson for the same equipment violation forty-two minutes after the initial stop is flagrant misconduct under the Fourth Amendment. The evidence obtained was fruit of the poisonous tree and must be suppressed as a violation of Bartelson's Fourth Amendment rights.

[¶ 46] On this record, the stop of Bartelson's vehicle violated the Fourth Amendment and his consent to the subsequent search was invalid. I would reverse the judgment of conviction and remand to allow Bartelson to withdraw his guilty plea.

[¶ 47] GERALD W. VANDE WALLE, C.J., concurs.