2009 ND 205

**Brock HARTLEIB, Plaintiff, Appellee and Cross–Appellant**

v.

**Ashley SIMES, n/k/a Ashley Farrell, and Susan Simes, Guardian of L.S., a minor child, Defendants, Appellants and Cross–Appellees**

**Guardian ad Litem for L.S., a minor child, Wayne D. Goter, Attorney at Law, Defendant and Appellee.**

No. 20080307.

Supreme Court of North Dakota.

Dec. 15, 2009.

Brenda A. Neubauer (argued), Bismarck, N.D., for plaintiff, appellee and cross-appellant.

Tracy JoHanna Lyson (appeared), Fargo, N.D., for defendant, appellant and cross-appellee Ashley Farrell.

Suzanne Marie Schweigert (argued), Bismarck, N.D., for defendant, appellant and cross-appellee Susan Simes.

Wayne D. Goter (argued), Guardian ad Litem, Bismarck, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Ashley Farrell and Susan Simes appealed from a district court judgment which terminated Simes's guardianship over L.S., ordered that Brock Hartleib have custody of L.S., provided visitation to Farrell and Simes, changed the last name of L.S., and ordered the parties to bear their own costs. Hartleib cross-appealed. We affirm.

I

[¶ 2] Farrell and Hartleib are the biological parents of L.S., who was born in 2002. Farrell and Hartleib were never married. After the birth of L.S., "Brock was incarcerated and Ashley was unable to care for [L.S.] for a number of reasons including post-partum depression and lack of appropriate living facilities for an infant." Farrell and Hartleib consented to Simes, Farrell's mother, being appointed as guardian of L.S. Simes also had guardianship over S.S., Farrell's daughter from a previous relationship.

[¶ 3] Farrell subsequently married and lived with her husband and two children born of that marriage. L.S. and S.S. continued to reside with Simes. After Hartleib was paroled and released from prison in 2005, he lived with his parents and worked in construction.

[¶ 4] In 2006, Hartleib brought this action requesting termination of the guardianship and seeking custody of L.S. The district court issued an interim order continuing custody of L.S. with Simes while the action was pending, with Hartleib receiving visitation.

[¶ 5] On the second day of trial in July 2007, the guardian ad litem who had been appointed to represent L.S. in this action filed an application for a protective order seeking an immediate change of interim custody to Hartleib based upon suspicion that L.S. had either been abused or had witnessed sexual abuse by Simes's husband. The district court granted the application for a protective order and temporarily placed custody of L.S. with Hartleib, with visitation for Farrell and Simes.

[¶ 6] The subsequent criminal investigation did not reveal any evidence of sexual abuse, and the trial was concluded in April 2008. The district court terminated the guardianship and awarded custody of L.S. to Hartleib. The court granted two weekends per month and one weekday per week of visitation to Farrell, with directions that the first weekend of visitation is to be exercised by Farrell and the second weekend may be exercised by Farrell, Farrell and Simes jointly, or Simes alone, in Farrell's discretion. Farrell also received three weeks of summer visitation. Farrell was ordered to pay child support, and each party was ordered to pay his or her own costs and attorney fees. Finally, the court ordered that L.S.'s last name be changed to Hartleib.

## II

[¶ 7] Farrell and Simes contend that the procedures employed by the district court violated their constitutional right to due process.

### A

[¶ 8] Farrell and Simes argue that they "were not given an opportunity to be heard on the Protective Orders thereby denying them their due process rights."

[¶ 9] A brief procedural history is necessary to put this issue in context. On July 25, 2007, the second day of trial, the guardian ad litem filed an application for a protective order seeking an immediate change of interim custody to Hartleib. The basis for the guardian ad litem's action was his suspicion, based upon evidence presented during the first day of trial, that L.S. had been sexually abused by, or had witnessed sexual abuse by, Simes's husband. Simes's husband did not live with her, but regularly provided childcare for L.S. and S.S. The guardian ad litem presented testimony from a prosecutor with extensive experience and training in sexual abuse cases, who substantiated the guardian ad litem's suspicions. Counsel for Farrell and Simes had the opportunity to cross-examine this witness and presented arguments that interim custody should remain with Simes or Farrell. The district court granted the application and placed temporary custody with Hartleib, and the trial was continued until the Bureau of Criminal Investigation could complete an investigation of the allegations of abuse. A few days later, the court amended the protective order to prohibit visitation by Farrell or Simes for two weeks.

[¶ 10] Simes brought a motion, joined by Farrell, to vacate the protective order and seeking an immediate return of custody to Simes. A hearing on the motion was

held on August 9, 2007. On August 21, 2007, the district court issued its order denying the motion to vacate the protective order, but setting a visitation schedule for Farrell and Simes.

[¶ 11] Following completion of the investigation by the Bureau of Criminal Investigation, which failed to find that L.S. had experienced or witnessed sexual abuse, Simes moved for reconsideration of the court's amended protective order and again sought an immediate return of custody to her. A hearing on the motion for reconsideration was held on November 30, 2007, and the court subsequently entered its order denying Simes's motion. L.S. remained in Hartleib's temporary custody until completion of the trial in April 2008, when the guardianship was terminated.

[¶ 12] We have summarized the essential requirements of procedural due process:

> "Generally, '[p]rocedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case.'"

*In re D.C.S.H.C.*, 2007 ND 102, ¶ 8, 733 N.W.2d 902 (quoting *St. Claire v. St. Claire*, 2004 ND 39, ¶ 6, 675 N.W.2d 175); *see also In re G.R.H.*, 2006 ND 56, ¶ 24, 711 N.W.2d 587; *Gullickson v. Kline*, 2004 ND 76, ¶ 15, 678 N.W.2d 138; *Walbert v. Walbert*, 1997 ND 164, ¶ 9, 567 N.W.2d 829; *In re Adoption of J.W.M.*, 532 N.W.2d 372, 377 (N.D.1995), *overruled on other grounds by In re Adoption of S.R.F.*, 2004 ND 150, ¶ 7, 683 N.W.2d 913. The specific requirements of due process "are flexible and vary depending upon the circumstances of each case." *St. Claire*, at ¶ 7. As we explained in *J.W.M.*, at 376–77 (quoting *Jensen v. Satran*, 332 N.W.2d 222, 227 (N.D.1983)):

> However, the very nature of procedural due process "negates the concept of inflexible procedures universally applicable to every imaginable situation; instead, the requirements imposed by [due process] are flexible and variable and dependent upon the particular situation being examined."

[¶ 13] Farrell and Simes contend they "were not given an opportunity to be heard on the Protective Orders." The record reveals, however, that they had three separate opportunities to be heard. On July 25, 2007, the court heard evidence and arguments from the parties, and Farrell and Simes had the opportunity to cross-examine the guardian ad litem's witness, before the court issued the protective order. A second hearing was held on Simes's motion to vacate the protective order, and a third hearing was held on Simes's motion for reconsideration. Under the circumstances presented in this case, the procedures employed by the district court did not deprive Farrell and Simes of their right to procedural due process.

B

[¶ 14] Farrell and Simes contend they were not given as much time as Hartleib to present their case and were not able to call all of their witnesses. They allege they were thereby denied their constitutional right to procedural due process.

[¶ 15] The district court has broad discretion over the presentation of evidence and the conduct of a trial or hearing. *E.g., Niemann v. Niemann*, 2008 ND 54, ¶ 19, 746 N.W.2d 3; *Burns v. Burns*, 2007 ND 134, ¶ 7, 737 N.W.2d 243; *Manning v. Manning*, 2006 ND 67, ¶ 30, 711 N.W.2d 149; *Gullickson*, 2004 ND 76, ¶ 15, 678 N.W.2d 138. In exercising that discretion, the court may impose reasonable restrictions upon the length of the trial or hearing and upon the number of

witnesses allowed. *Manning*, at ¶ 30; *Thompson v. Olson*, 2006 ND 54, ¶ 6, 711 N.W.2d 226. A district court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of reaching a reasonable determination, or if it misinterprets or misapplies the law. *E.g., Niemann*, at ¶ 19; *Burns*, at ¶ 7. Within the context of a due process challenge, "[a] court abuses its discretion only when the court employs a procedure which fails to afford a party a meaningful and reasonable opportunity to present evidence on the relevant issues." *Thompson*, at ¶ 6.

[¶ 16] Farrell and Simes make a blanket, unsupported assertion that Hartleib was given more time to present his witnesses than were they. They do not explain which additional witnesses they would have called or what those witnesses would have added to their case, nor did they make an offer of proof at trial. Without a sufficient offer of proof, we are unable to review whether a failure to allow presentation of evidence was prejudicial. *See Thompson*, 2006 ND 54, ¶ 7, 711 N.W.2d 226. We further note that the court heard more than four-and-one-half days of testimony in what was essentially a single-issue case. Based upon the record before us, we conclude the district court afforded the parties a meaningful and reasonable opportunity to present evidence on the relevant issues and did not abuse its discretion in conducting the trial. Farrell and Simes therefore were not denied due process.

### III

[¶ 17] Farrell and Simes contend the district court erred in terminating the guardianship and in awarding custody of L.S. to Hartleib.

[¶ 18] Under N.D.C.C. § 30.1–27–12(1), "[a]ny person interested in the welfare of a ward ... may petition for removal of a guardian on the ground that removal would be in the best interest of the ward." We have identified the applicable procedural framework and burdens of proof when a parent seeks to terminate a guardianship and regain custody of his or her child:

As we previously noted, the natural parent must initially prove, by a preponderance of the evidence, that the impediments leading to the creation of the guardianship have been removed. A nonparent seeking custody then has the burden of rebutting the presumption that it is in the best interests of the child to be in the custody of the parent. The presumption can be overcome when there exist "exceptional circumstances." We recognize today as a matter of law that a voluntarily established guardianship constitutes "exceptional circumstances." This conclusion triggers a best interest of the child analysis as required by our guardianship of minors' law. The burden of proof is then on the nonparent to establish it is in the best interest of the child that the guardianship continue. We conclude the evidentiary burden placed on the nonparent, is a preponderance of the evidence, because there is no persuasive reason to use a clear and convincing evidentiary standard. This evidentiary burden of proof applies in all terminations of a guardianship of a minor. In determining the best interest of the child, the trial court must weigh the benefits of stability of the child's relationship with the guardian and the benefits of the child's relationship with the natural par-

ent. This analysis is supported by our statutes and prior case law.

*In re Guardianship of Barros,* 2005 ND 122, ¶ 19, 701 N.W.2d 402.

[¶ 19] Under this process, the district court must first determine whether the impediments leading to the creation of the guardianship have been removed. *Id.* at ¶¶ 8, 19. In this case, the impediments leading to creation of the guardianship were Farrell's mental health and inability to parent the child, and Hartleib's incarceration. The district court determined those impediments have been removed. The record shows that Farrell's mental health issues have improved and that, with her husband, she now provides care for her two youngest children. Hartleib completed numerous rehabilitation programs while incarcerated and was released from prison in 2005. Evidence was presented showing he provided appropriate care and demonstrated ample parenting skills while L.S. was in his custody from July 2007 until the completion of trial in April 2008. On this record, the district court's finding that the impediments leading to the creation of the guardianship had been removed was not clearly erroneous.

[¶ 20] Once the court determined that the original impediments had been removed, a rebuttable presumption arose, based upon the parents' fundamental constitutional right to the custody of their child, that parental custody is in the best interest of the child:

It is undisputed that parents have a fundamental right to the custody and control of their children. *Troxel v. Granville,* 530 U.S. 57, 65–66 [120 S.Ct. 2054, 147 L.Ed.2d 49] (2000). We have repeatedly addressed the constitutional nature of parents' rights in raising their children.

Parents have a fundamental, natural right to their children which is of con-

stitutional dimension. *In re L.F.,* 1998 ND 129, ¶ 9, 580 N.W.2d 573; *Kleingartner v. D.P.A.B.,* 310 N.W.2d 575, 578 (N.D.1981). The right is paramount. *In re R.D.S.,* 259 N.W.2d 636, 638 (N.D.1977). A parent's paramount and constitutional right to the custody and companionship of their children is superior to that of any other person. *Patzer v. Glaser,* 396 N.W.2d 740, 743 (N.D.1986); *Hust v. Hust,* 295 N.W.2d 316, 318 (N.D.1980); *Boeddeker v. Reel,* 517 N.W.2d 407, 409 (N.D.1994).

*Hoff [v. Berg],* 1999 ND 115, ¶ 10, 595 N.W.2d 285. However, that right is not absolute and unconditional; it may be suspended if harmful to the child.

We have previously noted the superior rights parents have to the custody of their children over third parties. A majority of jurisdictions have recognized a similar form of superior right or parental preference doctrine. This preference merely creates a rebuttable presumption that parental custody is in the best interests of the children and is not the end of the inquiry.

*Barros,* 2005 ND 122, ¶¶ 9–10, 701 N.W.2d 402 (citations omitted).

[¶ 21] In order to overcome the presumption that parental custody is in the child's best interest, the nonparent seeking custody must demonstrate that "exceptional circumstances" exist, which will trigger a best interest of the child analysis. *Id.* at ¶¶ 11, 19 (quoting *Worden v. Worden,* 434 N.W.2d 341, 342 (N.D.1989)). In *Barros,* at ¶ 19, we held that, as a matter of law, a voluntarily established guardianship constitutes "exceptional circumstances." The district court in this case found that Simes's guardianship of L.S. had been voluntarily established with the consent of Farrell and Hartleib. Therefore, the pre-

sumption was rebutted and a best-interest analysis was triggered.

■■ [¶ 22] Ordinarily, we apply the best-interest analysis in custody disputes involving two parents, each seeking custody of their child. In such cases, the parents begin on an equal footing, with no underlying preference between the two parties. When, however, the best-interest analysis is applied in guardianship proceedings, the burden is upon the nonparent to prove by a preponderance of the evidence that it is in the child's best interest that the guardianship continue. *Id.* at ¶ 19.

[¶ 23] The best interest factors enumerated in N.D.C.C. § 14-09-06.2(1) apply to determine the best interest and welfare of the child. *Barros*, at ¶ 4. At the time of the trial in this case,[1] N.D.C.C. § 14-09-06.2(1) provided:

For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environ-

ment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

■■ [¶ 24] We recently summarized the standard of review in custody determi-

---

1. Chapter 14-09, N.D.C.C., including N.D.C.C. § 14-09-06.2, was extensively amended effective August 1, 2009. *See* 2009 N.D. Sess. Laws ch. 149.

nations based upon the factors in N.D.C.C. § 14–09–06.2(1):

> We exercise a limited review of child custody awards. A district court's decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.

*Koble v. Koble*, 2008 ND 11, ¶ 6, 743 N.W.2d 797 (quoting *Jelsing v. Peterson*, 2007 ND 41, ¶ 11, 729 N.W.2d 157); *see also Lindberg v. Lindberg*, 2009 ND 136, ¶ 4, 770 N.W.2d 252; *Burns v. Burns*, 2007 ND 134, ¶ 9, 737 N.W.2d 243. The district court is in a better position to weigh the evidence because it has the opportunity to observe the witnesses' demeanor and assess their credibility, and we do not retry custody issues, reassess the credibility of witnesses, or substitute our judgment for that of the district court if the court's decision is supported by evidence in the record. *Frueh v. Frueh*, 2009 ND 155, ¶ 7, 771 N.W.2d 593; *Koble*, at ¶ 6. On appeal, the complaining party bears the burden of proving a finding of fact is clearly erroneous. *Frueh*, at ¶ 16; *Koble*, at ¶ 6.

[¶ 25] The district court considered each of the best interest factors enumerated in N.D.C.C. § 14–09–06.2(1), and found that factors (b) and (d) favored Hartleib, factor (e) favored Simes, and the remaining factors were either equal among the parties or not applicable in this case. Under factor (m), "other factors," the court noted that both the court-appointed custody investigator and the guardian ad litem recommended that Hartleib have custody of L.S.

[¶ 26] Farrell and Simes challenge the district court's findings on several of the best interest factors under N.D.C.C. § 14–09–06.2(1), as well as its ultimate finding that termination of the guardianship and placement of custody with Hartleib was in L.S.'s best interest. The record in this case is voluminous, comprising four-and-one-half days of testimony, and the parties presented much conflicting evidence on the best interest factors. The district court expressly considered each factor and made separate, detailed findings on each one. From those findings, the court reached its ultimate finding that "Simes has failed to prove by a preponderance of the evidence that it is in the best interests of the child that the guardianship continue" and "the best interest and welfare of the child would best be met by awarding custody of [L.S.] to [Hartleib]."

[¶ 27] Farrell and Simes's challenges to the findings in essence invite us to reweigh conflicting evidence, reassess the credibility of the witnesses, and substitute our judgment for that of the district court. That is not the function of an appellate court. *See Frueh*, 2009 ND 155, ¶ 7, 771 N.W.2d 593; *Koble*, 2008 ND 11, ¶ 6, 743 N.W.2d 797. The district court was faced with a difficult custody decision involving not only two fit parents, but also a grandmother who had served as L.S.'s guardian and primary caregiver for the first five

years of his life. In such cases, our deferential standard of review is especially applicable. *E.g., Frueh,* at ¶ 16; *Niemann,* 2008 ND 54, ¶ 11, 746 N.W.2d 3.

[¶ 28] We have reviewed the record in this case and find ample support for the district court's findings of fact. The record includes evidence indicating L.S. adjusted well when custody was transferred to Hartleib, L.S. was "thriving" in Hartleib's care, and L.S. was at the time of trial a happy, healthy, normal six-year-old child. In addition, the court-appointed custody investigator, the guardian ad litem, the child's therapist, and the child's teacher all recommended that Hartleib receive custody. On this record, the district court's findings on the best interest factors and custody are not clearly erroneous.

### IV

[¶ 29] Farrell and Simes contend the district court erred in awarding "minimal and restrictive visitation" to Simes. Hartleib has cross-appealed on this issue, arguing that Simes should have no visitation rights with L.S.

[¶ 30] The district court ordered that Farrell receive visitation on two weekends each month, with the first weekend to be exercised by Farrell alone and the second weekend, in Farrell's discretion, to be exercised by Farrell, by Simes, or by the two jointly. The court noted that "[t]his does not mean that [L.S.] and [Simes] may never see each other during the first weekend of the month visitation, but that the Court's intention is that the primary purpose of this visitation is for [Farrell] to exercise visitation with [L.S.]." Simes also was allowed one telephone visit each week. Because of prior confrontations between Simes and Hartleib, the court also restricted Simes's attendance at L.S.'s extracurricular activities:

Unless the parties otherwise agree, or unless the parties complete joint family counseling and receive the approval of the counselor or therapist, [Simes] is not allowed to attend [L.S.'s] extracurricular school activities or events unless permission is specifically granted by the custodial parent, or unless the event is specifically designated as an event for grandparents. The custodial parent for the purposes of this paragraph is the parent who has custody of [L.S.] at the time of the activity or event.

[¶ 31] Grandparent visitation rights are governed by N.D.C.C. § 14–09–05.1, which, at the time of trial, provided in pertinent part:

The grandparents and great-grandparents of an unmarried minor may be granted reasonable visitation rights to the minor by the district court upon a finding that visitation would be in the best interests of the minor and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact that has occurred between the grandparents or great-grandparents and the minor and the minor's parents.

[¶ 32] Farrell and Simes contend Simes is entitled to additional visitation with L.S., arguing:

Under § 14–09–05.1, grandparents must be granted reasonable visitation rights unless a finding is made that visitation is not in the best interests of the minor. N.D.C.C. § 14–09–05.1. Visitation rights of grandparents are presumed to be in the best interest of the minor. *Id.*

Farrell and Simes have misstated the language of the statute. Section 14–09–05.1 provides that a court "may," not "must," grant visitation rights when the statutory requirements are met. Furthermore, nothing in the statute suggests that grand-

parent visitation rights "are presumed to be in the best interest of the minor," as Farrell and Simes assert.

[¶ 33] A district court's decision on grandparent visitation under N.D.C.C. § 14–09–05.1 is a finding of fact that will not be overturned on appeal unless it is clearly erroneous. *In re D.P.O.*, 2005 ND 39, ¶ 12, 692 N.W.2d 128 (*"D.P.O. II"*); *In re D.P.O.*, 2003 ND 127, ¶ 18, 667 N.W.2d 590 (*"D.P.O. I"*); *Schempp–Cook v. Cook*, 455 N.W.2d 216, 217 (N.D.1990). A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the basis of the entire record, we are left with a definite and clear conviction a mistake has been made. *E.g., Gustafson v. Gustafson*, 2008 ND 233, ¶ 6, 758 N.W.2d 895. As a prerequisite to awarding grandparent visitation, N.D.C.C. § 14–09–05.1 requires the district court to determine whether the visitation would be in the best interest of the child and whether the visitation would interfere with the parent-child relationship. *Clark v. Clark*, 2005 ND 176, ¶ 16, 704 N.W.2d 847; *D.P.O. I*, at ¶ 18; *Schempp–Cook*, at 217.

[¶ 34] The district court in this case addressed the relevant factors under the statute:

7. [Simes] has also requested visitation with [L.S.]. [Simes's] rights to visitation, as [L.S.'s] grandmother, are subject to the requirements of § 14–09–05.1 N.D.C.C. . . .

8. Section 14–09–05.1 N.D.C.C. provides that grandparent visitation must not only be in the best interests of the child, but also must not interfere with the parent-child relationship.

9. While the amount of contact [Simes] has had with [L.S.] in the past would indicate that visitation would be in [L.S.'s] best interest, the testimony and evidence at trial indicated that [Simes's] exercise of visitation with [L.S.] may well interfere with the parent-child relationship between [L.S.] and [Hartleib], which would be detrimental to [L.S.'s] best interests.

10. Considering all of these factors, and the testimony and evidence presented, the Court determines that visitation in the best interests of the child shall be as follows. . . .

[¶ 35] The parties in this case appear to be arguing the statute creates an all-or-nothing scenario. Farrell and Simes contend that, unless the court finds that visitation would be detrimental to the child, the court must award extensive grandparent visitation. Hartleib suggests that, if there is any evidence of an attempt to interfere with the parent-child relationship, all grandparent visitation is prohibited. We do not interpret the statute so inflexibly.

[¶ 36] From our review of the record, the district court's rationale and conclusions are clear. The court found L.S. had a very close relationship with Simes, who had been his primary caregiver for the first five years of his life. The statute recognizes that the amount of personal contact between the grandparent and the child is an important factor and must be considered by the court. *See* N.D.C.C. § 14–09–05.1. The court therefore acknowledged that Simes's past relationship with L.S. indicated visitation would be in his best interest. The court also recognized, however, that Simes had a very antagonistic relationship with Hartleib and that visitation "may well interfere with the parent-child relationship between [L.S. and Hartleib], which would be detrimental to [L.S.'s] best interests." The court thus attempted to balance these competing interests by awarding Simes limited visitation and restricting her attendance at extracurricular events where confrontations

with Hartleib might occur in L.S.'s presence. In prior cases upholding grandparent visitation in spite of evidence that there was a potential for interference with the parent-child relationship, we noted that the district court may reconsider the award of grandparent visitation rights if there is evidence of interference with the parent-child relationship in the future. *See D.P.O. II*, 2005 ND 39, ¶ 16, 692 N.W.2d 128; *D.P.O. I*, 2003 ND 127, ¶ 20, 667 N.W.2d 590.

[¶ 37] The district court explained its rationale in awarding only limited visitation to Simes, stating that "[l]imiting [Simes's] visitation should aid her adjustment from guardian/caregiver to the appropriate role of grandmother, which would be in [L.S.'s] best interest." Farrell and Simes attack this statement by the court, arguing:

> The Court overlooks that [Simes] was more than just a grandmother. She was [L.S.'s] psychological-mother.

This, in a microcosm, demonstrates the crux of the difficulty the district court faced in this case. Simes has steadfastly refused to acknowledge that she will not in the future occupy the same role in L.S.'s upbringing that she has in the past. While her part in raising L.S. in the past is commendable, the district court recognized it is time for her to embrace the more traditional role of grandmother to L.S. and accept the reality that she will no longer be his full-time parent figure and custodial caregiver. The district court attempted to implement that transition by awarding only limited visitation.

[¶ 38] There was voluminous evidence, including recommendations from expert witnesses for both sides, presented on the issue of the appropriateness of, and recommended extent of, grandparent visitation for Simes. The district court weighed the conflicting evidence, considered the appropriate factors under N.D.C.C. § 14–09–05.1, and awarded limited visitation to Simes. We have reviewed the record and conclude that the district court's findings of fact on this issue are not clearly erroneous.

V

[¶ 39] Farrell and Simes contend the district court erred in granting Hartleib's petition to change L.S.'s surname from Simes to Hartleib. The district court considered Hartleib's request to change L.S.'s name as a petition under N.D.C.C. ch. 32–28, and directed that the publication requirements of that chapter be complied with. The court thereafter ordered that L.S.'s surname be changed.

[¶ 40] The district court is vested with discretion when reviewing a petition for a name change under N.D.C.C. ch. 32–28. *Edwardson v. Lauer*, 2004 ND 218, ¶ 5, 689 N.W.2d 407; *Grad v. Jepson*, 2002 ND 153, ¶ 5, 652 N.W.2d 324. When a minor is involved, the requirement in N.D.C.C. § 32–28–02 that the court determine whether there is "proper and reasonable cause" for the proposed name change must include consideration of the best interest of the child. *Edwardson*, at ¶ 5; *Grad*, at ¶ 7.

[¶ 41] We have in the past employed the abuse-of-discretion standard of review on appeals from orders on petitions for a name change under N.D.C.C. ch. 32–28. *See, e.g., Grad*, 2002 ND 153, ¶ 5, 652 N.W.2d 324; *In re Mees*, 465 N.W.2d 172, 173 (N.D.1991). In *Edwardson*, however, we questioned application of that standard in cases involving a minor in light of our application of the clearly erroneous standard of review to a name change of a minor under the Uniform Parentage Act, N.D.C.C. ch. 14–17:

A decision to order a surname change under N.D.C.C. § 14–17–14(3) is driven by an examination of the best interests of the child, which is a factual process best suited for clearly erroneous review under N.D.R.Civ.P. 52(a). Although we applied the abuse-of-discretion standard to petitions to change a minor's name under N.D.C.C. ch. 32–28, *Grad v. Jepson*, 2002 ND 153, ¶¶ 5–7, 652 N.W.2d 324, we recognized that the discretion exercised by the district court necessarily includes consideration of the child's best interests. *Id.* Given the underlying applicability of the best-interests-of-the-child framework to both of these situations, the abuse-of-discretion standard is necessarily closely aligned to the clearly erroneous standard and it may be appropriate for us to revisit our application of the abuse-of-discretion standard to a petition to change a minor's name under N.D.C.C. ch. 32–28. Nonetheless, as this precise question is not currently before the Court, nor vital to our resolution of this appeal, we reserve this matter for a future case.

*Edwardson*, 2004 ND 218, ¶ 5, 689 N.W.2d 407.

[¶ 42] We again conclude it is unnecessary to decide whether to apply a different appellate standard of review to a name change for a minor under N.D.C.C. ch. 32–28. Applying either the clearly erroneous standard or the abuse-of-discretion standard, we conclude that the district court did not err in ordering a change of L.S.'s surname in this case. The district court succinctly stated its reasons for granting the name change:

Based upon the evidence and argument provided, it appears to the Court that there exists proper and reasonable cause for changing [L.S.'s] surname to HART-LEIB. At the present time he does not have the surname of either of his natural parents. Changing his surname to the

surname of his custodial parent would enhance the child's sense of belonging and security both at home and at school. It would prevent confusion and embarrassment to the child and promote a sense of family identity.

Whether we apply the clearly erroneous standard or the abuse-of-discretion standard, we conclude the district court did not err in ordering the name change.

## VI

[¶ 43] Hartleib on his cross-appeal alleges that the district court erred by not awarding him costs and attorney fees. Hartleib argues he was entitled to costs and attorney fees under N.D.C.C. § 28–26–01(2), which allows the court to award costs and attorney fees if a claim for relief is frivolous, and under N.D.C.C. § 28–26–31, which allows the court to award actual expenses including attorney fees if pleadings have been made without reasonable cause and not in good faith.

[¶ 44] Under N.D.C.C. § 28–26–01(2), the district court has discretion in determining whether a particular claim is frivolous. *City of Fargo v. Malme*, 2008 ND 172, ¶ 8, 756 N.W.2d 197; *Strand v. Cass County*, 2008 ND 149, ¶ 13, 753 N.W.2d 872. An award of costs and attorney fees under N.D.C.C. § 28–26–31 lies entirely within the discretion of the district court. *Strand*, at ¶ 14. A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Malme*, at ¶ 8.

[¶ 45] The district court explained its denial of costs and attorney fees in this case:

This has been a protracted and contentious litigation and, as a result, all parties have incurred substantial costs and legal expenses. Although in hindsight, some, or perhaps much, of the activity

generating these expenses may have been ill-advised and avoided, the Court did not, and does not, determine that any of the motions filed by the parties during the course of these proceedings have been frivolous. Accordingly, the requests by all parties for costs and attorney fees are denied and each party shall be responsible for his or her own respective costs and attorney fees.

[¶ 46] Based upon our review of the record, we conclude the district court did not abuse its discretion in failing to award Hartleib his costs and attorney fees.

### VII

[¶ 47] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 48] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.