778 N.W.2d 579 (2010)
2010 ND 28
In the Matter of the Petition of Lance BERGER on Behalf of Minor Child, K.C.F., for Change of Name.
Lance J. Berger, Petitioner and Appellant
v.
Amber Myhre, Respondent and Appellee.
No. 20090198.
Supreme Court of North Dakota.
February 17, 2010.
*581 Justin D. Hager, Bismarck, N.D., for petitioner and appellant.
Theresa L. Cole (on brief), Bismarck, N.D., for respondent and appellee.
SANDSTROM, Justice.
[¶ 1] Lance Berger appeals a district court order denying his petition to change the name of his son, K.F., to K.B. We affirm the district court's denial of the name change.

I
[¶ 2] Lance Berger and Amber Myhre are the parents of K.F., who was seven years old at the time this action was initiated. Berger and Myhre never married. Myhre is the custodial parent of K.F. K.F. was given his mother's maiden and then-surname at birth. Berger contested paternity, and paternity was established when K.F. was four months old. Berger has exercised visitation with K.F. since K.F. was fifteen months old. In June 2008, Myhre married and changed her surname to Myhre. K.F. retained his surname. In April 2009, Berger petitioned to change K.F.'s surname to Berger so that K.F. would have the same name as one of his parents. Myhre objected. The district court held a hearing on the petition in May 2009, during which both Myhre and Berger testified. The court also considered affidavits from various members of both Berger's and Myhre's families. The district court denied the petition, finding Berger failed to establish proper and reasonable cause to change K.F.'s name and finding there was no showing the name change would be in K.F.'s best interests.
[¶ 3] Berger appeals, arguing the district court erred in denying the petition to change K.F.'s surname and erred in considering untimely affidavits filed by Myhre.
[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06 and 32-28-01. Berger's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II
[¶ 5] Berger first argues the district court erred in denying his petition to change K.F.'s surname.

A
[¶ 6] Section 32-28-02 of the North Dakota Century Code allows for the name change of a petitioner when there is "proper and reasonable cause" for doing so. N.D.C.C. § 32-28-02(3). When reviewing a petition for a name change under N.D.C.C. ch. 32-28, the district court is vested with discretion. Hartleib v. Simes, 2009 ND 205, ¶ 40, 776 N.W.2d 217. When a minor is involved, the requirement of N.D.C.C. § 32-28-02 that the court determine whether there is "proper and reasonable cause" for the proposed name change necessarily includes consideration *582 of the best interests of the child. Id.; see also Grad v. Jepson, 2002 ND 153, ¶ 7, 652 N.W.2d 324.
[¶ 7] This Court has employed the abuse-of-discretion appellate standard of review to appeals from orders on name change petitions under N.D.C.C. ch. 32-28. Hartleib, 2009 ND 205, ¶ 41, 776 N.W.2d 217; see also Grad, 2002 ND 153, ¶ 5, 652 N.W.2d 324. We have questioned the application of the abuse-of-discretion standard in name change cases involving a minor, however, in light of our application of the clearly erroneous standard of review to cases involving a minor's name change under the Uniform Parentage Act. Hartleib, at ¶ 40; Edwardson v. Lauer, 2004 ND 218, ¶ 5, 689 N.W.2d 407. In Edwardson, we stated:
A decision to order a surname change under [the Uniform Parentage Act] is driven by an examination of the best interests of the child, which is a factual process best suited for clearly erroneous review under N.D.R.Civ.P. 52(a). Although we applied the abuse-of-discretion standard to petitions to change a minor's name under N.D.C.C. ch. 32-28, Grad v. Jepson, 2002 ND 153, ¶¶ 5-7, 652 N.W.2d 324, we recognized that the discretion exercised by the district court necessarily includes consideration of the child's best interests. Id. Given the underlying applicability of the best-interests-of-the-child framework to both of these situations, the abuse-of-discretion standard is necessarily closely aligned to the clearly erroneous standard and it may be appropriate for us to revisit our application of the abuse-of-discretion standard to a petition to change a minor's name under N.D.C.C. ch. 32-28. Nonetheless, as this precise question is not currently before the Court, nor vital to our resolution of this appeal, we reserve this matter for a future case.
Edwardson, at ¶ 5. In Hartleib, we again reserved the standard-of-review question for a future case. See Hartleib, at ¶ 42 (concluding it was unnecessary to decide whether to apply a different standard of review to a minor's name change under N.D.C.C. ch. 32-28).
[¶ 8] While the general standard of review for name change petitions under N.D.C.C. ch. 32-28 remains the abuse-of-discretion standard, it is necessary to recognize that whether there is "proper and reasonable cause" for a proposed name change of a minor child necessarily includes consideration of the best interests of the child. Hartleib, 2009 ND 205, ¶ 40, 776 N.W.2d 217; Grad, 2002 ND 153, ¶ 7, 652 N.W.2d 324. An examination of the best interests of the child is a factual process best suited for clearly erroneous review under N.D.R.Civ.P. 52(a). Edwardson, 2004 ND 218, ¶ 5, 689 N.W.2d 407. Therefore, we hold that while the general standard of review for name change petitions under N.D.C.C. ch. 32-28 remains the abuse-of-discretion standard, a district court's findings on the best interests of a child when deciding a petition to change the name of a minor child are subject to the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court is left with a definite and firm conviction a mistake has been made. Edwardson, at ¶ 6.

B
[¶ 9] Berger's petition to change K.F.'s name rests on three primary bases: 1) he wants K.F. to have a surname that matches at least one of his parents; 2) his family's surname is very important to him, and he wants to pass it on to K.F.; and 3) he believes it is confusing to K.F. to have a name that is different from both of his *583 parents' surnames, and he worries K.F. will be teased because of it.
[¶ 10] At the hearing before the district court, Berger testified K.F. has indicated he wants to have the name Berger. Berger testified K.F. wants to have the same surname his cousin has. Berger also testified he did not know whether he was going to have any more children and he wanted to pass on his family's name. Berger testified K.F. has encountered awkward situations because of having a different last name, such as K.F.'s cousins occasionally asking him about his name. When asked why it would be in the best interest of K.F. to have his last name changed, however, Berger responded, "I guess I don't understand. Can you repeat that again." After the question was repeated, Berger stated, "Well, he should have the name of one of his parents and  I don't know. It is a well-known name. I mean it's  I don't know. I guess I don't know how to answer that one."
[¶ 11] Myhre also testified at the hearing. She testified Berger has not been an integral part of K.F.'s life since his birth, and it would be harmful to K.F. to change his name at this point, when he is seven years old. She testified that when she got married, K.F.'s only concern was that he would not have to change his last name. She testified she considered hyphenating her name and asked K.F. whether he would be sad or hurt if she had a different last name than he had, and he said no. She testified K.F. has grandparents and other relatives who share his last name. Myhre also testified that Berger first began exercising visitation with K.F. when K.F. was fifteen months old and living with Myhre's parents while she was deployed to Iraq. She testified that while Berger loves K.F., he is not always regular in exercising visitation, he has failed to reimburse her for most of K.F.'s medical expenses, he allows K.F. to watch inappropriate movies and video games, he uses inappropriate language around K.F., and he does not always provide adequate supervision and nutrition for K.F.
[¶ 12] The district court gave the following reasons for denying the name change petition:
Based upon the testimony at the May 12, 2009, hearing and the affidavits in the file, the Court determines that Lance has failed to establish that there exists proper and reasonable cause for changing the name of the minor child. He has failed to show that K.C.F. will suffer any confusion, embarrassment, or other negative consequences if he retains his current name. While Lance's last name means a great deal to him, K.C.F. would still have a different last name from the other members of his household if his last name was changed to Berger. Amber testified that K.C.F. is used to his last name, that he knows how to write his last name, that his friends and classmates at school know his last name, that he has grandparents and other relatives who have the same last name, that he has not experienced any social problems because of his last name, and that he has not expressed any problems with his last name.
It is clear from the affidavits that changing K.C.F.'s last name to Berger is something that is important to Lance and his family. However, there has been no showing that the name change would be in K.C.F.'s best interests. The affidavits submitted by Lance in support of his petition also indicate that his family members have discussed the name change with K.C.F. and have placed pressure on K.C.F. to change his name. This conduct is highly inappropriate and must cease immediately. K.C.F. is a seven-year-old child who should not be *584 subjected to such inappropriate pressures and attempts to influence his decision by adults. If such conduct does not immediately cease, it may be considered by the Court as a reason to limit or restrict future visitation.
[¶ 13] K.F. was seven years old at the time this action was initiated. The factor of whether a child's surname matches at least one of his parents' names may be a valid consideration for an initial name determination, but K.F. is now in school. He has an established identity and friends who have known him by his name for some time. While Berger contends K.F.'s name will cause him confusion and teasing, changing K.F.'s surname at this point could invite even more questions from his peers.
[¶ 14] There is ample evidence to support the district court's findings on the best interests of K.F.; thus, the district court did not clearly err when it found Berger failed to establish proper and reasonable cause to change K.F.'s surname.

III
[¶ 15] Berger next contends the district court erred in considering untimely affidavits filed by Myhre.
[¶ 16] Berger initially requested the name change by making a motion in a visitation case between the same parties in the same court. Because the motion was not in compliance with N.D.C.C. ch. 32-28, the district court dismissed the first petition, and Berger filed this case. After Berger made the first motion, but before it was dismissed, Myhre filed a number of affidavits concerning both visitation and the name change under the visitation case number. After the first motion was dismissed and the current petition filed, Myhre filed identical affidavits for the current petition, but erroneously filed them under the visitation case number once again. The affidavits were served on Berger's attorney (who also represented him in the visitation matter), although they contained the wrong case number. After the May 12, 2009, hearing, when the district judge informed the parties he had neither of their sets of affidavits in his file, Myhre again filed her affidavits with the court and sent them to Berger's attorney. During the hearing, the court took judicial notice of the visitation case and stated it would consider the affidavits of both Myhre and Berger. The district court's order denying the petition was dated May 18 and filed May 21, 2009. The docket indicates Berger's affidavits were filed May 11, 2009. The docket indicates Myhre's affidavits were filed May 21, 2009.
[¶ 17] Berger contends Myhre's affidavits should not have been considered by the district court, because they were untimely filed. Under N.D.R.Civ.P. 5, "[a]ll affidavits, notices and other papers designed to be used upon the hearing of a motion or order to show cause shall be filed at least 24 hours before the hearing unless otherwise directed by the court." N.D.R.Civ.P. 5(d)(2) (emphasis added). "Consequently, the rule by its plain language grants the trial court discretion to direct otherwise and consider untimely filed documents." Flattum-Riemers v. Peters-Riemers, 2001 ND 121, ¶ 12, 630 N.W.2d 71. "When a statute or rule of procedure allows a court discretion to admit and consider untimely filed documents, the opposing party must show prejudice resulted from the untimely response." Id. Berger claims he was unable to cross-examine witnesses because of the untimely filed affidavits. The only affiant who testified, however, was Myhre, whom Berger did cross-examine. The district court's order focuses primarily on the testimony given by Myhre and Berger at the name-change hearing, as well as the affidavits of *585 Berger's family members, as opposed to the affidavits of Myhre and her family members. While the district court's order stated, "Both parties submitted affidavits which stated the affiants' respective beliefs for or against the requested name change," it made no other mention of Myhre's affidavits. During the hearing, the district court judge stated, "I don't have any of the information that has been going on apparently in other legal matters... between these parties. I don't have any of that information before me, so if you want me to rule on this motion, anything that is relevant ... I would like to know about." Finally, the district court's order is dated May 18, and Myhre's affidavits were filed May 21, 2009. It is unclear what effect, if any, Myhre's affidavits had on the district court's ruling. Berger has not shown he was prejudiced by the untimely filing of Myhre's affidavits.
[¶ 18] Additionally, Berger contends he should have been given ten days from the May 12 hearing to respond to the untimely filed affidavits. At the hearing, the following exchange occurred between Berger's attorney and the district court judge:
The court: I'm going to take it under advisement since there are a number of affidavits floating around out there somewhere that should find their way to this file before I rule on it.
Berger's attorney: Your Honor, if we may, since we have not received any of these affidavits from opposing counsel, if there is some issue that needs to be responded to in the affidavits, since I don't know what they say, we ask to have a chance to respond.
The court: I'll give you ten days to respond to the other party's affidavit if you need to.
[¶ 19] The district court clearly stated that a ten-day response time would be given only if necessary. The order denying the petition was dated May 18 and filed May 21. Myhre's affidavits were filed May 21. The order did not specifically reference Myhre's affidavits, other than stating that Myhre had submitted affidavits in support of her position. Rather, the district court's order focused primarily on Myhre's testimony and Berger's testimony, as well as the affidavits of Berger's family members. Additionally, the district court informed the parties it wanted to know all relevant information concerning the motion at the hearing. Berger has not shown he was prejudiced by the claimed inability to respond to the affidavits. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." N.D.R.Civ.P. 61.

IV
[¶ 20] Berger has moved to strike Myhre's appendix for violations of the North Dakota Rules of Appellate Procedure, and he requests she be sanctioned under N.D.R.App.P. 13.
[¶ 21] Under N.D.R.App.P. 30, only items actually in the record may be included in an appendix. N.D.R.App.P. 30(a)(1). Berger contends Myhre's untimely filed affidavits do not comply with this rule. The affidavits were part of the record below as certified by the clerk of district court. Thus, Berger's request that Myhre's appendix be stricken is denied.
[¶ 22] Also under N.D.R.App.P. 30, district court briefs of the parties may not be included in the appendix unless they have independent relevance. N.D.R.App.P. 30(a)(2). Berger contends a letter from Myhre's attorney to the district court constitutes a brief and thus should be excluded under Rule 30(a)(2). The letter explains why Myhre's affidavits were *586 originally filed under the wrong case number and asks the district court judge to accept the affidavits for consideration. Even if it were considered a brief, the letter has independent relevance, as it gives an explanation for the untimely filing of Myhre's affidavits and states that the affidavits were filed under the correct case number after the hearing. "District court briefs of the parties may not be included in the appendix unless they have independent relevance." N.D.R.App.P. 30(a)(2) (emphasis added).
[¶ 23] Because Myhre did not violate the North Dakota Rules of Appellate Procedure, Berger's request that Myhre be sanctioned is denied.

V
[¶ 24] The district court's denial of Berger's petition to change K.F.'s name is affirmed.
[¶ 25] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.
MARING, Justice, dissenting in part and concurring in part.
[¶ 26] I concur in parts III and IV of the majority's opinion. I respectfully dissent from part II and the majority's affirmance of the order denying Berger's petition to change the surname of his son to Berger.
[¶ 27] Section 32-28-02, N.D.C.C., provides for a name change when "there exists proper and reasonable cause" and includes consideration of the best interests of the child when a minor child's name is to be changed. Grad v. Jepson, 2002 ND 153, ¶ 7, 652 N.W.2d 324. I am left with a firm conviction a mistake has been made and, that the court has abused its discretion in denying the petition to change the child's surname to that of his father. My reasons for this opinion are set forth in my dissent in Grad v. Jepson, 2002 ND 153, ¶ 12, 652 N.W.2d 324 (Maring, J., dissenting). See, e.g., Montgomery v. Wells, 708 N.W.2d 704 (Iowa Ct.App.2005) (concluding the best interests considerations support changing the child's name to his father's and noting the child would otherwise have a different name than both parents because his mother was expecting a child with another man whom she planned on marrying and taking his last name); R.W.B. v. T.W., 23 S.W.3d 266, 268 (Mo.Ct. App.2000) ("We fail to see how the best interest of the child is served by setting him apart from other children in the community who may carry either their father's or mother's surname.").
[¶ 28] Mary Muehlen Maring