2010 ND 195

R.F., individually and as Personal Representative of the Estate of E.F., deceased, Plaintiff and Appellee

v.

M.M. and R.J.M., a minor child, by and through her guardian, M.M., Defendants

M.M., Appellant.

No. 20100046.

Supreme Court of North Dakota.

Oct. 19, 2010.

Gregory William Liebl, Fargo, N.D., for plaintiff and appellee.

Stephen R. Dawson, Fargo, N.D., for appellant.

SANDSTROM, Justice.

[¶ 1]   M.M., the mother, appeals from a judgment declaring E.F. the father of the child, R.J.M., and awarding grandparent visitation to R.F.   We hold R.F. had standing to bring the paternity action and the court's decision to award grandparent visitation is not clearly erroneous.   We affirm the judgment.

I

[¶ 2]   A child, R.J.M., was born in early 2008.   The mother and E.F. were never married, but had a sexual relationship before the child was born.   E.F. died a few months after the child was born.   The mother lived in North Dakota at the time of the child's birth, but she moved to South Carolina in December 2009.   After the child's birth the mother started a new dating relationship and plans to marry M.C.   R.F. is E.F.'s father, and he lives in Illinois.

[¶ 3]   In March 2009, R.F. filed a paternity action on E.F.'s behalf and requested grandparent visitation.   The mother moved to dismiss R.F.'s complaint, arguing he did not have standing to bring the paternity action.   The district court denied the mother's motion, concluding R.F. had standing to pursue the paternity action as an alleged grandparent under the Uniform Parentage Act.   The mother requested the court clarify its order denying her motion. R.F. moved to amend the complaint under N.D.R.Civ.P. 15 to further specify and distinguish the actions and parties involved in the suit.   The court granted the motion to amend the complaint under N.D.R.Civ.P. 15 and 17(a).   The complaint was amended, clarifying R.F. brought the suit individually and as a personal representative of E.F.'s estate.   After a hearing on R.F.'s motion, E.F. was adjudicated the child's father, and the court granted R.F. visitation with the child.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 5] The mother argues the district court erred in denying her motion to dismiss because R.F. did not have standing to bring a paternity action under N.D.C.C. § 14–20–37.

[¶ 6] Section 14–20–37, N.D.C.C., provides a list of those who have standing to maintain a proceeding to adjudicate parentage:

1. The child;

2. The mother of the child;

3. A man whose paternity of the child is to be adjudicated;

4. The support enforcement agency;

5. An authorized adoption agency or licensed child-placing agency; or

6. A representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated, or a minor.

Standing is a question of law, which we review de novo on appeal. *Hagerott v. Morton County Bd. of Comm'rs*, 2010 ND 32, ¶ 9, 778 N.W.2d 813.

[¶ 7] R.F. was appointed as a personal representative of E.F.'s estate on March 17, 2009. The mother was served with the summons and complaint in late February 2009, and she moved to dismiss on March 6, 2009. R.F. had not been appointed as a personal representative of E.F.'s estate at the time the suit began. We have said a party must have standing to start an action. *B.H. v. K.D.*, 506 N.W.2d 368, 375 (N.D.1993). This case, however, is different from *B.H.*

[¶ 8] In *B.H.*, 506 N.W.2d at 370, B.H. brought an action to dispute the paternity of a child born during the marriage of the child's mother to another man. We held B.H. did not have standing to dispute the child's paternity because the mother of the child was married at the time the child was born and her husband was presumed to be the child's father under the Uniform Parentage Act. *Id.* at 373–74. B.H. argued a genetic test could prove he is the child's father and would give him standing to rebut the presumption of paternity. *Id.* at 375. This Court said B.H. had to have standing when the action began, and therefore it would have been necessary for the genetic test results to have been in existence when the action was begun. *Id.* We said, "One cannot commence an action without standing, based only on the hope that standing may later materialize." *Id.*

[¶ 9] Here R.F. was appointed as a personal representative of E.F.'s estate within days of bringing the action. Unlike the plaintiff in *B.H.*, R.F. did not have to rely on the outcome of the proceedings to provide him with standing to bring the action. The mother concedes R.F. had standing to bring the paternity action after he was appointed as a personal representative. R.F. subsequently amended the complaint to clarify that he was bringing the action individually and as a personal representative of E.F.'s estate.

[¶ 10] A complaint may be amended under N.D.R.Civ.P. 15(a). Under N.D.R.Civ.P. 17(a) the real party in interest may ratify an action, or be joined or substituted as a party before the action can be dismissed for failing to prosecute the action in the name of the real party in interest:

Every action must be prosecuted in the name of the real party in interest. An executor, administrator … may sue in

that person's own name without joining the party for whose benefit the action is brought; .... No action may be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after the objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and the ratification, joinder, or substitution has the same effect as if the action had been commenced in the name of the real party in interest.

[¶ 11] Rule 17, N.D.R.Civ.P., is derived from Fed.R.Civ.P. 17, and federal court interpretation of the federal rule is persuasive in interpreting our rule. *Goodleft v. Gullickson,* 556 N.W.2d 303, 309 (N.D. 1996). Federal courts have said the rule should be liberally applied to allow joinder or substitution of the real party in interest when the change is merely formal and does not alter the complaint's factual allegations as to the events or participants. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 20 (2d Cir. 1997).

[¶ 12] In *Goodleft,* 556 N.W.2d at 305, this Court reversed a district court's decision dismissing a wrongful death action brought by the deceased child's grandmother, who was also the personal representative of the child's estate. We held the grandmother was not the appropriate party to bring a wrongful death action under N.D.C.C. § 32–21–03, but the court failed to give her reasonable time to substitute the child's parents as plaintiffs or for their ratification of the action under N.D.R.Civ.P. 17. *Goodleft,* at 309–10. In other cases with facts similar to the facts in this case, courts have also held parties are entitled to substitute themselves, as a personal representative of an estate, under Rule 17, when the action is initially brought in an individual capacity and the opposing party claims the individual lacks standing. *See Duckett v. District of Columbia,* 654 A.2d 1288 (D.C.1995) (trial court erred in dismissing for lack of standing without allowing the plaintiff, who was the decedent's mother, to substitute herself, as plaintiff in her capacity as her son's personal representative under Rule 17); *Brohan v. Volkswagen Mfg. Corp. of America,* 97 F.R.D. 46 (E.D.N.Y.1983) (decedent's widow sued for wrongful death, court granted the plaintiff's motion to amend the complaint under Rule 17 and substitute herself as the plaintiff after defendants moved to dismiss, defendants claimed she lacked standing because wrongful death claims accrue only to the decedent's personal representative and plaintiff was not appointed as a personal representative until three years after the action began).

[¶ 13] R.F. was appointed as a personal representative of E.F.'s estate on March 17, 2009, which was a short time after he brought the action and the mother moved to dismiss. R.F.'s appointment as a personal representative gave him standing to bring a paternity action under N.D.C.C. § 14–20–37. The powers of a personal representative relate back in time and give acts by the person appointed that occur prior to the appointment and that benefit the estate the same effect as acts occurring after the appointment. N.D.C.C. § 30.1–18–01; *see also* N.D.R.Civ.P. 15(c); N.D.R.Civ.P. 17(a) (substitution has the same effect as if the action had been commenced in the name of the real party in interest). R.F.'s status as a personal representative relates back in time and gave him standing to bring a paternity action when this action began. *See Hutchinson on Behalf of Baker v. Spink,* 126 F.3d 895 (7th Cir.1997) (state court order appointing mother as special administrator of child's estate relates back to her commencement

of federal civil rights suit on behalf of the estate to give her standing). R.F. amended the complaint to clarify that he was bringing the suit individually and as a personal representative of E.F.'s estate. The amendment was merely formal, the complaint's factual allegations about the events and participants did not change, R.F. could have brought the action again if the court had dismissed his complaint, and the mother was not prejudiced. The complaint was properly amended under N.D.R.Civ.P. 15 and 17.

[¶ 14] Moreover, R.F. also requested grandparent visitation under N.D.C.C. § 14–09–05.1. The mother moved to dismiss the action to determine parentage and argued parentage would have to be established to grant R.F.'s motion for grandparent visitation. The standing requirements for a paternity action under N.D.C.C. § 14–20–37 do not apply to a motion for grandparent visitation. Section 14–09–05.1, N.D.C.C., does not expressly require parentage be determined under N.D.C.C. ch. 14–20 before an alleged grandparent can move for visitation; rather, the burden is on the moving party to prove he or she meets the statutory requirements for visitation, including that he or she is a grandparent within the meaning of the statute. Here, paternity was not disputed. The mother testified during the hearing that E.F. is the child's father. R.F. had standing to bring a motion for grandparent visitation.

[¶ 15] We conclude R.F. had standing and the district court did not err in denying the mother's motion to dismiss.

### III

[¶ 16] The mother argues the district court erred in granting R.F.'s motion for grandparent visitation because a grandparent must have an existing relationship with the child to receive visitation under N.D.C.C. § 14–09–05.1. She contends the court's findings are clearly erroneous because they are not supported by the evidence, no relationship exists between R.F. and the child, and the visitation will interfere with the parent-child relationship.

[¶ 17] A district court's decision on grandparent visitation is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *In re D.P.O.*, 2005 ND 39, ¶ 12, 692 N.W.2d 128. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is not evidence to support the finding, or this Court concludes, on the basis of the entire record, that a mistake has been made. *Id.*

[¶ 18] A court may order grandparent visitation under N.D.C.C. § 14–09–05.1, which provides:

1. The grandparents and great-grandparents of an unmarried minor child may be granted reasonable visitation rights to the child by the district court upon a finding that visitation would be in the best interests of the child and would not interfere with the parent-child relationship.

2. The court shall consider the amount of personal contact that has occurred between the grandparents or great-grandparents and the child and the child's parents.

Before a court orders grandparent visitation, there must be a motion requesting visitation from the grandparent, and the court must find the visitation is in the child's best interests and the visitation will not interfere with the parent-child relationship. *Clark v. Clark*, 2005 ND 176, ¶ 16, 704 N.W.2d 847; *see also Schempp-Cook v. Cook*, 455 N.W.2d 216, 217 (N.D. 1990) (the court is required to make ex-

press findings on the statutory requirements).

[¶ 19] The mother contends N.D.C.C. § 14–09–05.1 also requires a grandparent have an existing relationship with the child before a court may order visitation. Interpretation of a statute is a question of law, which is fully reviewable on appeal. *Walberg v. Walberg*, 2008 ND 92, ¶ 9, 748 N.W.2d 702. The primary objective in interpreting a statute is to determine legislative intent. *Id.* To determine legislative intent, we look at the language of the statute first and give words their plain, ordinary, and commonly understood meaning, unless the words are specifically defined by statute or a contrary intention plainly appears. N.D.C.C. § 1–02–02. "If the language of a statute is clear and unambiguous, 'the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit.' " *Walberg*, at ¶ 9 (quoting N.D.C.C. § 1–02–05). If a statute is ambiguous, a court may consider extrinsic aids to determine the legislative intent. N.D.C.C. § 1–02–39.

[¶ 20] The plain language of N.D.C.C. § 14–09–05.1 is clear and unambiguous, and does not require an existing relationship between the grandparent and child before a court may order visitation. The statute requires the court consider the amount of contact between the grandparent and child and the child's parents, which allows the court to consider whether there is an existing relationship and any reasons why a relationship does not exist or why there may have been little contact.

[¶ 21] Here the district court granted R.F.'s motion for visitation, and properly considered the statutory factors. The court considered the amount of contact between R.F. and the child and found R.F. has had infrequent contact with the child since her birth, but found this was caused by the physical distance between R.F. and the child and by the mother's decision to prevent any contact after E.F.'s death:

> Based upon the testimony, and as discussed above, it is clear that [the mother] has been the one preventing personal contact between [the child] and [R.F.] ... In this case, [R.F.] has done everything in his power to continue his relationship with his granddaughter. However, [the mother] has prevented this relationship by changing addresses, telephone numbers, and email addresses, as well as refusing packages and instructing family member of her intentions to prevent [R.F.] from acting in [the child's] best interests.

[¶ 22] Although the mother claims there is no evidence of a relationship between R.F. and the child, R.F. testified at the hearing that he had had a good relationship with E.F. and had communicated with E.F. regularly, E.F. and the mother had visited him in Illinois before the child was born, and he had purchased clothing items and other things for the mother and the child. There was evidence R.F. visited the child in the hospital after she was born. R.F. testified he planned to travel to North Dakota to see the child again within a few months of her birth, but they had a hard time setting a date for the visit when the child would have been available. R.F. testified he often had talked with E.F. about the child and E.F. had sent him pictures of the child. E.F. died approximately four months after the child was born, severing the natural connection through which R.F. would have formed a relationship and would have had contact with the child. There was evidence R.F. and his wife contacted the mother after E.F.'s death, they sent the mother emails asking about the child and stating they wanted to have a relationship with her, and they sent the mother gifts and pictures for the child. There was evidence

the mother changed her phone number, did not give R.F. her address after she moved, and told family members not to give R.F. her contact information. The mother testified that she has prevented R.F. from having a relationship with the child since E.F.'s death. The evidence supports the court's findings.

[¶ 23] The court found visitation is in the child's best interests because R.F. loves the child, he wants to pass his knowledge and care onto the child, he is able to provide for the child's financial and developmental needs, and he is able to provide a loving and nurturing relationship that only a grandparent can provide. The court found R.F. understands the mother's plans to marry within the next year and it is in the child's best interests for her to marry and have a "father-figure" in the home. The court found R.F.'s "recognition of the mother's future happiness and of his secondary role as a grandfather further convinces the Court that allowing grandparent visitation by this particularly sophisticated and understanding grandfather is in [the child's] best interests."

[¶ 24] The court found visitation would not interfere with the parent-child relationship:

> [R.F.] testified that he is supportive of [the mother's] relationship with her daughter, supportive of her disciplinary strategy, and supportive of her religious beliefs. [R.F.] hopes that his involvement in [the child's] life can strengthen that relationship rather than hinder it. Furthermore, the Court does not find that any visitation time it grants to [R.F.] would hinder the parent-child relationship. [E.F.], as [the child's] biological parent, would have been given some time with the child. [R.F.] will receive a fraction of that amount of time.

■ [¶ 25] The mother contends the court's finding that the visitation will not interfere with the parent-child relationship is not supported by the evidence and the court is imposing its judgment on how to raise the child. She testified she was not sure she would tell the child that E.F. is her father and that her fiancé, M.C., is not her father. She testified she does not want R.F. to have visitation because it would interfere with her decision whether to tell the child who her father is, M.C. has helped raised the child and plans to adopt her, and it may alienate the child and make her feel as though she is not as much a part of the family. R.F. testified he would respect the mother's wishes regarding the child's religion and discipline, and he would not interfere with the child's relationship with M.C. The evidence supports the court's findings that R.F. would respect the mother's wishes and will be supportive of the parent-child relationship. Although there is evidence visitation could potentially interfere with the mother's future parenting decisions, the district court can revisit the matter of grandparent visitation if there is evidence of interference in the future. *See Hartleib v. Simes,* 2009 ND 205, ¶ 36, 776 N.W.2d 217.

[¶ 26] Citing *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the mother contends she has a right to decide not to allow a relationship between R.F. and the child and her decision must remain free from government intervention. In *Troxel,* at 66–70, 120 S.Ct. 2054, a plurality of the United States Supreme Court held the Due Process Clause of the Fourteenth Amendment protects parents' fundamental right to make decisions about the rearing of their children, there is a presumption that fit parents act in their children's best interests, and it violates the parents' substantive due process rights if the court does not give deference or special weight to the fit parents' decision. The mother con-

tends a court must defer to a fit parent's decision under *Troxel,* and she claims the district court's decision here is not consistent with *Troxel* because the court substituted its judgment on how to raise the child. However, the mother only argues the court's findings are clearly erroneous and are not supported by the evidence, and she does not argue the statute is unconstitutional on its face or as applied in this case. *Cf. Zasueta v. Zasueta,* 102 Cal.App.4th 1242, 126 Cal.Rptr.2d 245 (2002) (statute was unconstitutional as applied when the court ordered grandparent visitation after the death of the child's parent without applying the required presumption that a fit parent would act in the child's best interests and without giving deference to the surviving parent's decision); *Wickham v. Byrne,* 199 Ill.2d 309, 263 Ill.Dec. 799, 769 N.E.2d 1, 7–8 (2002) (grandparent visitation statute is facially unconstitutional because it placed parents and grandparents on equal footing, which directly contravened the presumption that a fit parent acts in the child's best interests, and allowed the state to infringe on a parent's fundamental right to make child rearing decisions); *Marquez v. Caudill,* 376 S.C. 229, 656 S.E.2d 737, 746–47 (2008) (grandparent visitation statute is constitutional, and a biological parent's death and attempts to maintain ties to a deceased parent's family may be compelling circumstances justifying visitation over a fit parent's objection). The mother did not properly raise this issue and we will not address it on appeal. *See State v. Bachmeier,* 2007 ND 42, ¶ 10, 729 N.W.2d 141 (an argument will not be not considered on appeal if it is not adequately articulated, supported, and briefed).

[¶ 27] After reviewing the record, we conclude the evidence supports the court's findings, and the court properly considered the required statutory factors for awarding visitation and made the required factual findings. We affirm the court's decision to award R.F. grandparent visitation.

IV

[¶ 28] We affirm, holding R.F. had standing to bring the paternity action and the district court's decision to award grandparent visitation is not clearly erroneous.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.