2014 ND 83

**Amanda E. KULBACKI, Plaintiff and Appellant**

v.

**Nicholas W. MICHAEL, Defendant and Appellee.**

No. 20130283.

Supreme Court of North Dakota.

April 29, 2014.

Kari RaNae Winning, Grand Forks, ND, for plaintiff and appellant.

Nicholas W. Michael, self-represented, Terre Haute, IN, defendant and appellee; submitted on brief.

Troy Thomas Seibel, Assistant Attorney General, Office of Attorney General, Bis-

marck, ND, for amicus curiae State of North Dakota; submitted on brief.

CROTHERS, Justice.

[¶ 1] Amanda E. Kulbacki appeals from a district court judgment awarding Kulbacki a divorce from Nicholas W. Michael and granting Michael's mother grandparent visitation. Kulbacki argues that the district court erred in awarding grandparent visitation under section 14–09–05.1, N.D.C.C., that section 14–09–05.1, N.D.C.C., violates the United States and North Dakota Constitutions, that the district court erred in including a provision that a future termination of Michael's parental rights would not impact his mother's visitation rights and that the district court erred in denying Kulbacki's motion for attorney fees as a victim of domestic violence contemplated in section 14–09–29(4), N.D.C.C. We affirm the district court's determination that section 14–09–05.1, N.D.C.C., is constitutional and that grandparent visitation under section 14–09–05.1, N.D.C.C., would not automatically end upon termination of Michael's parental rights. We determine the district court unconstitutionally placed the burden on Kulbacki to show· grandparent visitation was not in the child's best interests and made a legal error in determining attorney fees by impermissibly considering Kulbacki's return to Michael after she experienced domestic abuse at his hands. We reverse and remand.

I

[¶ 2] A May 18, 2012 judgment of divorce dissolved Kulbacki and Michael's ten-month marriage. Kulbacki and Michael have one daughter together. Kulbacki lives with their daughter in Arizona and does not plan to return to North Dakota. Michael was incarcerated on three counts of aggravated assault, one count of interfering with a telephone emergency call, three counts of violating a protection order, one count of felonious restraint, one count of animal mistreatment and one count of simple assault. Michael was sentenced to five years imprisonment, with three years suspended, in addition to five years supervised probation upon release. Michael was sentenced to 96 months incarceration in the federal system when he completes his state sentence.

[¶ 3] On September 28, 2012, Michael and his mother, Shawn Coulter, filed a motion for grandparent visitation under section 14–09–05.1, N.D.C.C. No motion was filed to intervene or join Coulter as a party. After failed mediation, hearings were held on March 26 and April 11, 2013 to address Michael and Coulter's motion for grandparent visitation and Kulbacki's motion to establish a parenting plan. Kulbacki did not attend either hearing. On April 8, 2013, Kulbacki initiated an action to terminate Michael's parental rights in the superior court for Maricopa County, Arizona.

[¶ 4] In addition to granting Kulbacki an absolute decree of divorce and legal custody of their child, the district court found section 14–09–05.1, N.D.C.C., constitutional and awarded Coulter one half-hour unsupervised grandparent visitation for each day Kulbacki is in Grand Forks. The district court determined Kulbacki failed to establish limited grandparent time would interfere with her relationship with her child and would be contrary to the child's best interests. The district court determined that if Michael's parental rights are terminated, the termination would not adversely affect the grandparent visitation accorded Coulter. The district court denied Kulbacki attorney fees under section 14–09–29(4), N.D.C.C. Kulbacki appealed.

## II

[¶ 5] Kulbacki contends the district court erred in awarding grandparent visitation because Coulter was not a party to the action and she did not make a motion for grandparent visitation. Section 14-09-05.1(4), N.D.C.C., provides:

> "An application for visitation rights under this section may be considered by the district court in conjunction with a divorce proceeding involving the parent of the minor child. If any district court of this state retains jurisdiction over the residential placement of the minor child or children by virtue of any prior proceedings, the rights conferred by this section may be enforced by the grandparents or the great-grandparents through motion under the prior proceeding. If no district court otherwise has jurisdiction, a proceeding to enforce grandparental rights may be brought against the parent having primary residential responsibility as a civil action and venued in the county of residence of the minor child."

While our case law specifies a motion must be filed by a grandparent seeking visitation, our statute discusses an "application for visitation rights" and states such an application *may* be sought through a motion. N.D.C.C. § 14-09-05.1(4); *R.F. v. M.M.*, 2010 ND 195, ¶ 18, 789 N.W.2d 723; *Clark v. Clark*, 2005 ND 176, ¶ 16, 704 N.W.2d 847; *Alvarez v. Carlson*, 474 N.W.2d 79, 82-83 (N.D.1991). The statute does not prescribe the precise form of request, but basic due process requires a written filing by a grandparent seeking to assert their visitation interests. N.D.C.C. § 14-09-05.1(4); *St. Claire v. St. Claire*, 2004 ND 39, ¶ 6, 675 N.W.2d 175 ("Generally, '[p]rocedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case.'" (citation omitted)). Whether by action, application, intervention, joinder, motion or petition, a grandparent seeking visitation must submit some sort of formal request so that custodial parental rights are protected. *See Alvarez*, 474 N.W.2d at 83 ("By requiring the grandparent to request visitation through a motion or a separate action, the statute protects the rights of the custodial parent or other interested party who may be adverse to the request, giving them notice and an opportunity to voice objection to the request."). Here, Coulter was not a party to the action, but she filed a joint motion with Michael requesting grandparent visitation. Coulter's motion provided clear notice to Kulbacki of her request for grandparent visitation and gave Kulbacki an opportunity to respond. Coulter's motion satisfied minimum due process and statutory requirements for seeking grandparent visitation.

## III

[¶ 6] Kulbacki argues section 14-09-05.1, N.D.C.C., is unconstitutional on its face and as applied. This Court upholds the constitutionality of a statute unless it is "'clearly shown to contravene the state or federal constitution.'" *Hoff v. Berg*, 1999 ND 115, ¶ 7, 595 N.W.2d 285 (citation omitted). "Natural parents have a fundamental liberty interest in the care, custody, and management of their children." *Id.* at ¶ 8 (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "'[T]he Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests ... unless the infringement is narrowly tailored to serve a compelling state interest."'" *Hoff*, at ¶ 13 (citation omitted). This Court employs "strict scrutiny when analyzing statutory intrusions on parents' fundamental right to control their children's associations[,]" and

" '[o]nly compelling circumstances should justify governmental intervention to override parental choices for their children's associations beyond the immediate household.' " *Id.* at ¶ 16 (citation omitted).

### A

[¶ 7] Kulbacki asserts section 14–09–05.1, N.D.C.C., violates the Fourteenth Amendment of the United States Constitution and Article I, Section 1 of the North Dakota Constitution. This Court in *Hoff* struck down a previous version of section 14–09–05.1, N.D.C.C., which created a presumption in favor of grandparent visitation. 1999 ND 115, ¶ 18, 595 N.W.2d 285. That version was unconstitutional because North Dakota does not have a compelling interest in presuming grandparent visitation is in the child's best interests. *Id.* at ¶¶ 17–19. The year after *Hoff,* the United States Supreme Court struck down a Washington grandparent visitation statute because it failed to give special weight to a parent's decision regarding grandparent visitation. *Troxel v. Granville,* 530 U.S. 57, 69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The Supreme Court noted the Washington court unconstitutionally placed the burden on the custodial parent to show visitation was not in the children's best interests. *Id.* at 69–70, 120 S.Ct. 2054. After *Troxel* and *Hoff,* section 14–09–05.1(1), N.D.C.C., was updated to state: "The grandparents and great-grandparents of an unmarried minor child may be granted reasonable visitation rights to the child by the district court upon a finding that visitation would be in the best interests of the child and would not interfere with the parent-child relationship."

■ [¶ 8] Kulbacki argues section 14–09–05.1, N.D.C.C., is unconstitutional because no provision exists for deference to a custodial parent's decisions regarding grandparent visitation. The current version of section 14–09–05.1(1), N.D.C.C., requires that grandparent visitation "would not interfere with the parent-child relationship." "[I]f a statute is capable of two constructions, one that would render it of doubtful constitutionality and one that would not, the constitutional interpretation must be selected." *Peterson v. Peterson,* 1997 ND 14, ¶ 26, 559 N.W.2d 826. Several other courts have concluded similar statutory language gives deference to a parent's decision regarding grandparent visitation. *See Currey v. Currey,* 2002 SD 98, ¶ 13, 650 N.W.2d 273, 277 (South Dakota's grandparent visitation statute, requiring a court to find the grandparent visitation "would not significantly interfere with the parent-child relationship," is constitutional and complies with the requirements set forth in *Troxel.*); *SooHoo v. Johnson,* 731 N.W.2d 815, 823 (Minn.2007) (Minnesota's visitation statute is "narrowly tailored by providing that before a court may order visitation, the court must find that visitation is in the best interests of the child and that visitation will not interfere with the custodial parent's relationship with the child."); *State ex rel. Brandon L. v. Moats,* 209 W.Va. 752, 551 S.E.2d 674, 685–86 (2001) ("[W]e are convinced that the Legislature both anticipated and provided for the proper consideration of the parent's liberty interest within the parameters of the *Troxel* ruling. This is demonstrated ... by the legislatively-imposed requirement that any grant of visitation must be preceded by an express affirmative finding that the visitation 'w[ill] not substantially interfere with the parent-child relationship.' " (citation omitted)).

■ [¶ 9] We agree with the judicial interpretations in our sister states. North Dakota's provision for consideration of the best interests of the child, and whether the grandparent visitation would interfere with the parent-child relationship, is narrowly

tailored to advance the State's compelling interest in promoting grandparent visitation while protecting the parents' right to parent their child. The statute passes constitutional muster under both the Federal and North Dakota Constitutions.

### B

■ [¶ 10] Kulbacki contends section 14–09–05.1, N.D.C.C., is unconstitutional as applied. The district court stated in its corrected amended judgment and decree nunc pro tunc that "the Plaintiff has failed to establish that the limited grandparental time sought would interfere in the slightest with her own relationship with L.F.K., nor that the limited time sought is contrary to her daughter's best interests...." It is well-established the burden is on the moving party to show visitation is in the best interests of the child and would not interfere with the parent-child relationship. *See Troxel*, 530 U.S. at 69, 120 S.Ct. 2054 (holding the burden of proof in grandparent visitation cases rests with the party requesting the visitation); *R.F.*, 2010 ND 195, ¶ 14, 789 N.W.2d 723 ("[T]he burden is on the moving party to prove he or she meets the statutory requirements for visitation...."). The district court improperly placed the burden on Kulbacki to show grandparent visitation was not in the child's best interests. We reverse and remand for a constitutional application of the burden.

### IV

[¶ 11] Kulbacki argues the district court inappropriately ordered sua sponte that a termination of Michael's parental rights would have no impact on Coulter's grandparent visitation. Kulbacki cites to section 14–09–05.1(3), N.D.C.C., for the proposition that "[a]ny visitation rights granted under this section before the adoption of the child may be terminated upon the adoption if termination of the rights is in the best interest of the child." Kulbacki's citation to section 14–09–05.1(3), N.D.C.C., is irrelevant because she fails to connect the statute to her arguments concerning the effect of Michael's parental rights termination on Coulter's visitation.

■ [¶ 12] In its discussion of paternal grandparent visitation under section 14–09–05.1, N.D.C.C., the district court's corrected amended judgment and decree nunc pro tunc stated, "Should a Court terminate Mr. Michael's parental rights, such a termination will not adversely affect the grandparental visitation accorded his mother in this action." The district court specifically noted in its memorandum decision and order that Kulbacki instituted a termination of parental rights case against Michael in Arizona. The district court's decree that a termination of parental rights would not adversely affect grandparental visitation rights was a recognition that section 14–09–05.1, N.D.C.C., does not provide for automatic termination of grandparental visitation if Michael's parental rights are terminated. Kulbacki is not prevented from seeking an adjustment of grandparent visitation if Michael's parental rights are terminated. The district court did not err in making a statement of law that grandparent visitation awarded to Coulter under section 14–09–05.1, N.D.C.C., would not be automatically ended by termination of Michael's parental rights.

### V

■ [¶ 13] Kulbacki argues that because she was a victim of domestic violence, Michael is required to reimburse her for attorney fees and costs under section 14–09–29(4), N.D.C.C. This Court will not overturn an award of attorney fees unless the district court abused its discretion and its "actions [were] arbitrary, capricious, or

unreasonable, or when its decision is not the product of a rational mental process." *Buchholz v. Buchholz,* 1999 ND 36, ¶ 18, 590 N.W.2d 215.

[¶ 14] A domestic violence perpetrator is required to pay fees when:

> "In any proceeding dealing with parental rights and responsibilities in which a parent is found to have perpetrated domestic violence, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, all court costs, attorney's fees, evaluation fees, and expert witness fees must be paid by the perpetrator of the domestic violence unless those costs would place an undue financial hardship on that parent."

N.D.C.C. § 14–09–29(4). The district court denied attorney fees, stating that although Michael perpetrated domestic violence against Kulbacki during their relationship and charges were brought against him, Kulbacki subsequently chose to marry him. The district court also noted that at least one domestic violence incident occurred post-marriage, but that insufficient evidence established a pattern of domestic violence or serious injury.

[¶ 15] Section 14–09–29(4), N.D.C.C., does not provide a basis to deny attorney fees because a victim of domestic violence returns to the domestic violence perpetrator. We do not address whether the award of attorney fees was an abuse of discretion because the district court made a legal error in determining attorney fees. The district court impermissibly considered Kulbacki's return to Michael after she experienced domestic abuse at his hands under section 14–09–29(4), N.D.C.C. We reverse and remand for a determination of whether attorney fees are appropriate under section 14–09–29(4), N.D.C.C.

## VI

[¶ 16] We conclude that section 14–09–05.1, N.D.C.C., does not violate the Fourteenth Amendment of the United States Constitution or Article I, Section 1 of the North Dakota Constitution, but that the district court unconstitutionally placed the burden on Kulbacki to show grandparent visitation was not in the child's best interests. We conclude the district court did not err in making a statement of law that Coulter's grandparent visitation awarded under section 14–09–05.1, N.D.C.C., would not automatically end upon termination of Michael's parental rights. We conclude under section 14–09–29(4), N.D.C.C., the district court made a legal error in determining attorney fees because it impermissibly considered Kulbacki's return to Michael after she experienced domestic abuse at his hands. We affirm in part, reverse in part and remand for further proceedings to allow for a constitutional application of the burden of proof and for a determination of whether an award of attorney fees is appropriate under the criteria set out in section 14–09–29(4), N.D.C.C.

[¶ 17] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.